**Yvonne SERNA, on behalf of herself and others similarly situated, Appellant,**

v.

**H.E. BUTT GROCERY CO., Appellee.**

No. 04–99–00278–CV.

Court of Appeals of Texas, San Antonio.

Dec. 8, 1999.

Opinion Denying Rehearing Feb. 9, 2000.

Eduardo Serna, Crystal City, Mark A. Montgomery, Norman Jolly, Houston, for appellant.

Robert A. Valadez, Stephen D. Navarro, Shelton & Valadez, P.C., Wallace B. Jefferson, Nissa M. Sanders, Crofts, Callaway & Jefferson, P.C., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN A. ANGELINI, Justice.

**OPINION**

Opinion by: PHIL HARDBERGER, Chief Justice.

Yvonne Serna, on behalf of herself and others similarly situated (collectively, "Serna"), appeals the trial court's order that dismissed her[1] lawsuit for lack of jurisdic-

---

1. For clarity, all references to Serna, whether by proper name or pronoun, refer both to her

tion. Serna argues that the trial court in Zavala County has jurisdiction over her allegations that H.E. Butt Grocery Co. ("H.E.B.") fraudulently overcharged state sales tax. We affirm the trial court's order of dismissal.

## BACKGROUND

Serna filed suit against H.E.B. in the 365th Judicial District Court, Zavala County, Texas. In her original petition, she asserts that H.E.B. and its employees fraudulently overcharged sales tax against her purchases. After being served with the petition, H.E.B. conducted a statewide audit of its stores and determined that it had indeed overcharged customers the amount of sales tax due on their purchasers in three stores during a 2½-year period. H.E.B. corrected the problem, but did not request a refund of the tax that was overpaid; no one requested an assignment of H.E.B.'s interest in the overpayment.

The trial court dismissed Serna's lawsuit for lack of jurisdiction. Serna contends that the aim of the suit is not to seek a refund of sales tax. According to Serna, the suit asserts a common-law fraud claim. H.E.B. responds that the suit should be construed as seeking a refund of sales tax. If so, administrative remedies are available under the Texas Tax Code and the proper jurisdiction, upon exhaustion of those remedies, is with the district courts of Travis County.

## DISCUSSION

### 1. Standard of Review

■ The question of whether the trial court should have exercised jurisdiction over Serna's claim is subject to de novo review. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). In reviewing the trial court's order of dismissal for lack of jurisdiction, we construe Serna's pleadings in her favor and try to determine her

as well as the proposed class of those whom

intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). We may consider only those matters that Serna presented to the trial court. *See Huston v. F.D.I.C.,* 663 S.W.2d 126, 129 (Tex.App.-Eastland 1983, writ ref'd n.r.e.).

### 2. Construing Serna's Pleadings

Under a liberal reading of Serna's pleadings, we must determine the "wrong" Serna alleges that H.E.B. committed against her. Her original petition asserts, in part, that:

> Defendant acting by and through its employees, in consort, and conspiring to commit fraud upon the Plaintiff was and is continuing to charge an unlawful and excessive sales tax on goods sold.... Defendant knowingly concealed material information from the Plaintiff and others similarly situated with the intent of inducing the plaintiffs to purchase goods encumbered with an excessive and illegal sales tax rate.

Serna states that had she known of these concealed facts, she "would not have agreed to purchase the goods from the Defendant." The prayer requests, in part, that "Plaintiffs have and recover from Defendants their actual damages; pre-judgment interest at the highest legal rate and costs of court incurred."

■ We note that H.E.B.'s inadvertent overcharge of sales tax gave rise to this law suit. Texas law requires H.E.B. to collect sales tax on the sale of certain goods as the state's agent; H.E.B. then holds the funds in trust for the state. *See* TEX. TAX CODE ANN. § 111.016(a) (Vernon Supp.1999). A person claiming a refund of sales tax is entitled to have the amount improperly collected, as well as pro-rated interest on that amount, credited against any other obligation that the taxpayer has; the Comptroller then refunds the remainder. *See id.* § 112.060. The funds in question are (and have been since their collec-

she alleges are similarly situated.

tion) tax monies that are property of the State of Texas. H.E.B. never had the use of these monies, whether in the correct or incorrect amount. Serna apparently intends to obtain a refund of overcharged sales tax along with interest. The relief she seeks (although couched under a common-law remedy of fraud) is available under the Texas Tax Code.

### a. Case Law

Texas case law does not aid us in resolving the conflict within Serna's pleadings, but there are federal cases that help us understand the true nature of Serna's claims. In these cases, Southwest Airlines and other carriers had collected federal excise taxes from passengers who purchased tickets in 1995 for travel during 1996; the excise tax was permitted to expire and was no longer in force when the passengers actually traveled. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1405–06 (9th Cir.1998). One of the unifying issues among the three cases is whether the lawsuits against the airlines under common-law remedies actually amounted to lawsuits seeking the refund of taxes. *See Brennan*, 134 F.3d at 1408, 1412 (stating that the plaintiffs alleged "unlawful business practices and breach of contract" and holding that "where the plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund"); *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1202 (5th Cir.) (recalling Sigmon's allegations of fraud and conversion and stating that a private cause of action for recovery of the excise tax against the airline is not permitted), *cert. denied*, 522 U.S. 950, 118 S.Ct. 370, 139 L.Ed.2d 268 (1997); *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349, 350, 353 (7th Cir.) (indicating that Kaucky sought recovery on the basis of conversion and breach of contract and holding that the lawsuit amounted to "a tax refund suit brought against the wrong party"), *cert.*

*denied*, 522 U.S. 949, 118 S.Ct. 368, 139 L.Ed.2d 286 (1997). These courts rely upon several factors in order to conclude that these lawsuits, which sought common-law remedies on their face, amounted to tax refund cases. We turn next to the elements from these opinions that we find helpful in resolving the present case.

### b. The Collector of Taxes Serves As an Agent of the State and the Remedy for Excess Tax Paid Lies with the Comptroller of Public Accounts

In collecting sales tax, H.E.B. acts as an agent of the State of Texas government; the proper remedy afforded by the Texas Tax Code lies only with ultimate recipient of the taxes, not the intermediary. *See* TEX. TAX CODE ANN. § 111.104 (Vernon 1992); *cf. Sigmon*, 110 F.3d at 1203. The *Sigmon* court construed the applicable Internal Revenue Code section as protecting the entities that are required to collect taxes for the government from private lawsuits arising from the collection of tax. *See Sigmon*, 110 F.3d at 1203. The proper administrative remedies under the Texas Tax Code lie against the *Comptroller*. The Texas Legislature did not contemplate direct action against the *vendor* who collects the sales tax on the state's behalf. *Cf.* TEX. TAX CODE ANN. § 111.104 (Vernon 1992) (stating that "[a] tax refund claim may be filed *with the comptroller by the person who paid the tax* ") (emphasis added); *Fleming Foods v. Rylander*, 6 S.W.3d 278, 287 (1999) (permitting a grocer-vendee to seek redress directly from the state).

The *Brennan* court highlights an important policy argument that also underlies H.E.B.'s role as agent. The federal tax refund statute is "designed to confine suits for the refund of federal taxes to suits . . . against the government in order to protect its private [collection] agents from being whipsawed."[2] *Brennan*, 134 F.3d at 1411 (citation omitted). The purchaser of the

---

2. Whipsaw: "[T]o . . . victimize in two opposite ways at once, by a two-phase operation, or by the collusive action of two opponents."

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1344 (1991).

goods in question ultimately bears the burden of paying the tax to the state. The agent does not have the money. The state does. *See Davis v. State*, 904 S.W.2d 946, 952–953 (Tex.App.-Austin 1995, no writ) (stating that "the economic burden of the tax is on the purchaser: the sales tax will either be *collected by the seller from the purchaser under the state's authority* and then remitted to the state; or, if the seller fails to bill the purchaser, the tax will be collected directly by the state from either the seller or purchaser") (emphasis added).

### c. Other Policy Considerations Support Construing this Case As a Suit to Recover Taxes

Other policy considerations support the result that this case is actually a suit to recover overcharged sales tax. *Cf. Brennan*, 134 F.3d at 1410–12 (refusing to allow the aggrieved airline passengers to evade the "strictures" of the relevant statute that governs tax refunds and noting that to do so would render the statute "virtually a dead letter"). Allowing aggrieved taxpayers to ignore Section 112.151 would disrupt the Comptroller's ability to investigate tax claims and resolve them without the time and expense of litigation. *Cf. id.* at 1411.

If H.E.B. had overcharged customers in several counties of this state, and the customers filed suit in their respective local district courts, the results from one trial court to another could be inconsistent. Such disparate outcomes would be unfair both to the aggrieved taxpayers as well as the state. The Texas Legislature was apparently mindful of the Comptroller's ability to respond consistently to tax refunds; the Comptroller is vested with authority over an administrative mechanism in the Tax Code that makes the most efficient use of the Comptroller's administrative functions in the areas of tax collection and refunds. Allowing the parties to circumvent this process undermines the very administrative efficiency that it seeks to achieve.

Because of the possibility of numerous lawsuits and inconsistent verdicts, allowing plaintiffs to override the state's tax refund statute by seeking common-law relief for what is actually a tax refund is harmful to judicial economy as well. Such pleadings could even afford taxpayers the opportunity to receive double recoveries for what are likely administrative oversights by the vendor. In the present case, H.E.B. immediately sought to correct its error by conducting a *statewide* audit of its stores and ensuring that each store was charging only the correct sales tax as permitted by its respective locality.

### d. Federal Circuit Court of Appeals Cases As Persuasive Authority

■■■■ We realize that these cases from the federal circuit courts of appeals are not binding upon us.[3] *See Lee M. Bass, Inc. v. Shell Western E & P, Inc.*, 957 S.W.2d 159, 162 n. 4 (Tex.App.-San Antonio 1997, no pet.). But we draw on the authority of these cases to reach a conclusion that is consistent with the fair and efficient administration of the Texas sales tax. To this end, we do not see how permitting a

---

**3.** We also acknowledge that one of the key statutes addressed by the *Brennan, Sigmon,* and *Kaucky* courts differs from the provisions of the Texas Tax Code. *Compare* 26 U.S.C. § 7422(a) (West 1998) (stating, in part, that "No suit or proceeding shall be maintained in any court for the recovery of ... tax, or of any penalty ... *or of any sum alleged to have been excessive or in any manner wrongfully collected* until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]") (emphasis added), *with* TEX. TAX.CODE ANN. § 112.151 (Vernon 1992) (stating, in part, that "[a] person may sue the comptroller to recover *an amount* of tax, penalty or interest that has been the subject of a tax refund claim") (emphasis added). The Internal Revenue Code's broad language allowed, for example, the Fifth Circuit to construe a claim for fraud as a claim for a tax refund. *See Sigmon*, 110 F.3d at 1203; We believe that our construction of Serna's pleadings and Section 112.151 is consistent with the policy aim of administrative efficiency, as expressed by the requirement of presenting suits for the refund of sales tax to the Comptroller for administrative review before commencing action in the district courts of Travis County.

party to cloak a suit under a different cause of action, in order to seek redress from the agent who collects the tax (and who no longer holds the funds in question), furthers the goals of judicial economy, administrative efficiency, or fairness. H.E.B. derives no benefit from overcharging a customer for sales tax and would be improperly harmed by a lawsuit against it to recover sales tax. We conclude that this lawsuit against H.E.B., claiming taxes were collected in an amount greater than the legal rate, actually amounts to a suit for a tax refund as if the suit had been filed against the Comptroller.

### 3. The Mechanics of Obtaining a Refund of Overcharged of Sales Tax

#### a. Texas Tax Code

■ As a suit for the refund of tax paid, Section 112.151 of the Texas Tax Code governs the case. The proper step for seeking a refund of overcharged sales tax properly begins with pursuing administrative remedies against the beneficiary of the sales tax windfall, the State of Texas. The Texas Tax Code outlines the procedure to file *suit* (following an unsuccessful administrative claim for refund) for the refund of taxes paid. *See* TEX. TAX CODE ANN. § 112.151 (Vernon 1992). A person may sue the Comptroller for an "amount of tax, penalty, or interest" if: the person *has filed a claim* with the Comptroller under Section 111.104,[4] the claim has been denied, the person has filed a motion for rehearing under Section 111.105,[5] the motion has been denied by the Comptroller, and any additional tax due for the period in which the refund claim is sought has been paid. *See id.* The suit is to be brought against the Attorney General and the Comptroller *in a district court of Tra-*

*vis County,* and must be filed before the expiration of 30 days after the motion for rehearing is denied. *See id.* §§ 112.001, 112.151. A taxpayer may claim this refund directly from the State of Texas regardless of whether the taxpayer paid the tax directly to the state. *See Fleming,* at 280–82. These steps were not followed here. Not only were the administrative remedies detailed in Sections 111.104–105 (which are required under Section 112.151) not pursued, the district court of Zavala County cannot have jurisdiction of this lawsuit.[6] *Cf. Bullock v. Mel Powers Inv. Builder,* 682 S.W.2d 400, 402 (Tex.App.-Austin 1984, no writ) (dismissing the taxpayer's lawsuit because the taxpayer failed to comply with the administrative remedies required under Section 112.151's statutory predecessor).

#### b. Exclusive Remedy

■ The Texas Tax Code affords an aggrieved taxpayer the only means for claiming or suing for a refund of overcharged sales tax. By enacting legislation that affords a remedy not found at common law, the legislature intended for the remedies and causes of action under Section 112.151 to be exclusive. *See Bullock,* 682 S.W.2d at 402 (explaining that by enacting the statutory predecessor to Sections 112.151–54, "the Legislature intended to create a right and a remedy ... not recognized at common law") (citation omitted); *see also Central Power & Light Co. v. Sharp,* 919 S.W.2d 485, 491 (Tex.App.-Austin 1996), *writ denied per curiam,* 960 S.W.2d 617 (Tex.1997). The Texas Supreme Court has stated, "The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory

---

**4.** Section 111.104 lists the detailed requirements for filing a tax refund claim with the Texas Comptroller of Public Accounts. *See generally* TEX. TAX CODE ANN. § 111.104 (Vernon 1992).

**5.** *See generally id.* § 111.105 (Vernon 1992 & Supp.1999).

**6.** The district court of Zavala County will never have jurisdiction under Section 112.001, which confers original jurisdiction of a suit for a tax refund upon the district courts of Travis County. *See id.* § 112.001 (Vernon 1992).

and exclusive, and must be complied with in all respects or the action is not maintainable." *Mingus v. Wadley*, 115 Tex. 551, 558, 285 S.W. 1084, 1087 (1926); *see Travelers Indem. Co. v. Montelongo*, 785 S.W.2d 436, 437–38 (Tex.App.-Corpus Christi 1990, writ denied). Because we have concluded that this suit against H.E.B., in which Serna purports to seek relief based on common-law fraud, should be construed as a suit for a tax refund, the proper remedies are through the Texas Tax Code.

### CONCLUSION

We hold that commencing what amounts to a suit for the refund of overcharged sales tax in the district court of Zavala County was improper because the trial court did not have jurisdiction to resolve the case.

We affirm the trial court's order of dismissal.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

On December 9, 1999, one day after our opinion in this case issued, the Texas Supreme Court withdrew its June 30, 1999 opinion in *Fleming Foods v. Rylander* and issued a replacement. *See Fleming Foods v. Rylander*, 6 S.W.3d 278 (Tex.1999). In her motion for rehearing, Serna argues that:

1. This Court's opinion is in direct conflict with Supreme Court of Texas precedent;

2. We should look solely to Serna's pleadings in deciding whether the trial court has jurisdiction in this case; and

3. Allowing a taxpayer to seek a refund from the retailer in a class action proceeding is more efficient than requiring the taxpayer to seek the refund from the comptroller.

### DISCUSSION ON MOTION FOR REHEARING

Serna alleges that we "did not have the benefit of the . . . reissued and revised decision in *Fleming Foods v. Rylander*." Serna asserts that *Fleming Foods v. Rylander* instructs "that the proper method for recovering illegally collected taxes is from the retailer." We disagree with Serna's reading of the revised opinion.

The "opening sentence" of *Fleming Foods* states the *issue* before the court: "The issue in this case is *whether* a taxpayer who pays sales tax to a vendor rather than directly to the State [an indirect taxpayer] may request a tax refund from the State *without receiving an assignment of refund rights from the vendor.*" *Fleming Foods*, 6 S.W.3d at 279 (emphasis added). In the next sentence, the court held that the Texas Tax Code permits "an indirect taxpayer to pursue refunds *without first obtaining an assignment* from the vendor who collected and remitted the tax." *Id.* (emphasis added) *Fleming* does not say, as Serna contends, that the *proper* method for recovering illegally collected taxes is from the retailer.

Serna argues that an important result of *Fleming* is that the "*method* of collection is left to the taxpayer's election." Again, we disagree. *Fleming* allows "an indirect taxpayer . . . to seek refunds of sales tax from the State." *Id.* at 287. Alternatively, such a taxpayer may seek an *assignment* of the right to obtain a refund from the vendor and *then* file a claim with the Comptroller of Public Accounts. *See* Tex. Tax Code Ann. § 111.104 (Vernon Supp.2000). In either scenario, aggrieved taxpayers ultimately seek their desired refund from the Comptroller. In short, the supreme court's reissued opinion does not change the result in the case before us.

In our previous opinion, we did not state that the enactment of the Texas Tax Code "abolished common-law fraud claims." We construed Serna's claim of fraud as a claim for a sales tax refund. *See Serna*, 21 S.W.3d 301, 303–06. Because her suit

amounted to a claim for a tax refund, she should have filed the claim with the Comptroller. Even if we accept her pleadings as true, her intent is to obtain a replacement of the funds that she overpaid in the form of sales tax. She filed a claim for a sales tax refund that was cloaked in the form of a common-law fraud cause of action. *See id.* at 303 (noting that Serna sought "actual damages; pre-judgment interest at the highest legal rate and costs of court incurred").

Serna suggests that aggrieved taxpayers file their claims for sales tax refunds against vendors. We do not see the wisdom in such a plan, particularly if the vendor has not sought a refund of the funds (as is the case here) from the Comptroller. Serna's argument that "[i]t would cost the taxpayer more to get his refund" from the Comptroller than from the vendor is without merit. Pursuing a claim with the Comptroller obviates the need to file suit (which normally involves attorney fees) and incur court costs.

### CONCLUSION
We deny Serna's motion for rehearing.