Opinion issued January 23, 2003





 





In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01014-CV




CONNIE BURGESS, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY
SITUATED CONSUMERS, Appellant

V.

GALLERY MODEL HOMES, INC. D/B/A GALLERY FURNITURE AND ALL
SIMILARLY SITUATED RETAILERS, Appellee




On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 98-29143




O P I N I O N

            This appeal arises from a suit brought by appellant, Connie Burgess, to obtain
a refund of overcharged sales tax. On appeal, we must determine whether the trial
court properly granted a plea to the jurisdiction in favor of appellee, Gallery Model
Homes, Inc. d/b/a Gallery Furniture (Gallery). Burgess presents one issue for our
review: whether the trial court has jurisdiction over a suit by a consumer seeking to
recover from a retailer payment of a Houston Metropolitan Transit Authority Tax
(MTA) erroneously collected by the retailer. We affirm. 
Background
          Gallery is engaged in the retail furniture business in Houston, Texas. Like
other Houston retailers, Gallery collects state sales taxes and MTA taxes on items it
sells. After collecting the taxes, Gallery is obligated to turn the proceeds over to the
state.  Burgess purchased furniture from Gallery, which delivered it to Burgess’s
residence, an area located outside the MTA area. While retailers are required to
collect MTA taxes, they are not authorized to collect MTA tax on purchases made
inside an MTA area but delivered outside the MTA area. Burgess filed suit
individually and on behalf of similarly situated customers,


 alleging that Gallery
improperly and illegally charged and collected an MTA tax.



          In response, Gallery filed a plea to the jurisdiction, alleging that jurisdiction
over Burgess’s claim for a tax refund rests exclusively with the Texas Comptroller
of Public Accounts, but, in the event the comptroller denies relief, the courts of Travis
county have jurisdiction. The trial court granted the plea to the jurisdiction. Burgess
appeals the trial court’s order. 
          In her sole issue, Burgess argues that the trial court had jurisdiction to
determine whether Gallery properly collected the MTA tax on purchases delivered
outside the MTA area.


 Gallery argues, on the other hand, that the Texas Comptroller
has exclusive jurisdiction to decide Burgess’s tax refund claim. 
Standard of Review
          Subject-matter jurisdiction is essential to the authority of a court to decide a
case. Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). 
The plaintiff bears the burden of alleging facts affirmatively showing that the trial
court has subject-matter jurisdiction. Id. at 446. “The absence of subject-matter
jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural
vehicles, such as a motion for summary judgment.” Bland Indep. Sch. Dist. v. Blue,
34 S.W.3d 547, 554 (Tex. 2000). Here, Gallery challenged the trial court’s subject-matter jurisdiction through a plea to the jurisdiction. 
          Whether a trial court has subject-matter jurisdiction is a question of law and is
reviewed de novo. Mayhew v. Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). 
Similarly, whether an agency has exclusive jurisdiction is a question of law we review
de novo. See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222
(Tex. 2002). When conducting a de novo review, the appellate court exercises its
own judgment and redetermines each legal issue, giving no deference to the trial
court’s decision. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998). 
          In deciding a plea to the jurisdiction, a court may not weigh the claims’ merits,
but must consider only the plaintiffs’ pleadings and the evidence pertinent to the
jurisdictional inquiry. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.
2002). The court of appeals must take the allegations in the petition as true and
construe them in favor of the pleader. Texas Ass’n of Business, 852 S.W.2d at 446;
Texas Dep’t of Criminal Justice v. Miller, 48 S.W.3d 201, 203-04 (Tex.
App.—Houston [1st Dist.] 1999), rev’d on other grounds, 51 S.W.3d 583, 589 (Tex.
2001). 
Discussion
          Burgess brought suit pursuant to section 111.104(f) of the Tax Code. Section
111.104(f) provides that “[n]o taxes, penalties, or interest may be refunded to a
person who has collected the taxes from another person unless the person has
refunded all the taxes and interest to the person from whom the taxes were collected.”
Tex. Tax Code Ann. § 111.104(f) (Vernon 2001).



          Section 111.104(f) is a subsection of a scheme for seeking refund of certain
taxes, including sales tax, set out in section 111.104 of the Tax Code.


 Section
111.104(b) provides that “[a] tax refund claim may be filed with the comptroller by
the person who paid the tax or by the person’s attorney, assignee, or other successor.” 
Tex. Tax Code Ann. § 111.104(b) (Vernon 2001). Sections (c)-(e) specify the form
of the claim, establish limits on the amount that may be refunded and the time period
for requesting a refund, and designate the types of taxes to which the statute applies. 
Tex. Tax Code Ann. §§ 111.104(c)-(e) (Vernon 2001).
          Burgess contends that, while section 111.104 of the Tax Code provides an
administrative remedy for tax overcharges, namely by a person’s filing a claim with
the comptroller, that remedy is not exclusive; rather, section 111.104(f) “clearly
contemplate[s] private, direct actions between retailers and consumers” for the refund
of tax overcharges. Gallery argues, in reply, that, because the remedy Burgess seeks
is a refund of taxes, the statutory provisions of the Texas Tax Code constitute
Burgess’s exclusive procedure for obtaining the remedy she seeks. 
          Under the exclusive-jurisdiction doctrine, the Legislature grants an
administrative agency the sole authority to make an initial determination in a dispute. 
Subaru, 84 S.W.3d at 221 (quoting Cash America Int’l, Inc. v. Bennett, 35 S.W.3d 12,
15 (Tex. 2000)). An agency has exclusive jurisdiction “when a pervasive regulatory
scheme indicates that [the Legislature] intended for the regulatory process to be the
exclusive means of remedying the problem to which the regulation is addressed.” 
Subaru, 84 S.W.3d at 221. Whether an agency has exclusive jurisdiction depends on
statutory interpretation. Id. Typically, if an agency has exclusive jurisdiction, a party
must exhaust all administrative remedies before seeking judicial review of the
agency’s action. Id. (quoting Cash America Int’l, Inc. v. Bennett, 35 S.W.3d 12, 15
(Tex. 2000). Until then, the trial court lacks subject-matter jurisdiction and must
dismiss the claims within the agency’s exclusive jurisdiction. Id. We must
determine, therefore, whether section 111.104 and the administrative rules
promulgated thereunder set out a “pervasive regulatory scheme” for the refund of
improperly collected MTA taxes.
 
Serna v. H.E. Butt Grocery Co. and Fleming Foods v. Rylander
          To support its position that the comptroller has exclusive jurisdiction over suits
to refund an improperly collected MTA tax, Gallery relies on the San Antonio Court
of Appeals’ decision in Serna v. H.E. Butt Grocery Co., 21 S.W.3d 330 (Tex.
App.—San Antonio 1999, no pet.). Burgess recognizes that Serna is on point, but she
urges that it was incorrectly decided. We therefore turn to an analysis of Serna. 
          In Serna, the plaintiff brought an action against H.E. Butt Grocery Co. (H.E.B.),
alleging that it fraudulently overcharged state sales tax. Serna, 21 S.W.3d at 332. The
trial court, in a case of first impression, dismissed the plaintiff’s lawsuit for lack of
jurisdiction. Id. at 336. In reaching its decision, the Serna court, relying upon federal
case law,


 held that the Texas Tax Code affords an exclusive remedy for an aggrieved
taxpayer to obtain a refund for overcharged sales tax. Id. at 335-36. It found that, in
collecting sales tax, the remedy afforded by the Texas Tax Code lies only with the
ultimate recipient of the tax, not the intermediary; the ultimate recipient is the State
of Texas; a seller who collects sales tax merely holds the funds collected in trust for
the state until remitted; thus, H.E.B. acted as an agent of the State of Texas
government. Serna, 21 S.W.3d at 332-33. The Serna court concluded that proper
administrative remedies for improperly collected taxes lay only with the comptroller;
the Texas Legislature did not contemplate direct action against the seller who
collected the tax on the state’s behalf. Id at 333. 
          The Serna court held that the mechanics of obtaining a refund of overcharged
sales tax began with a person’s pursuing administrative remedies against the ultimate
beneficiary of the sales tax, the State of Texas, regardless of whether the person
seeking the remedy was the purchaser or the retailer. Serna, 21 S.W.3d at 335. The
court stated:
The Texas Tax Code outlines the procedure to file suit (following an
unsuccessful administrative claim for refund) for the refund of taxes paid. 
A person may sue the Comptroller for the amount of tax penalty, or
interest if: the person has filed a claim with the Comptroller under
section 111.104, the claim has been denied, the person has filed a motion
for rehearing under section 111.105, the motion has been denied by the
Comptroller, and any additional tax due for the period in which the
refund claim is sought has been paid. The suit is to be brought against
the Attorney General and the Comptroller in a district court of Travis
County, and must be filed before the expiration of 30 days after the
motion for rehearing is denied. (citations omitted)
 
Serna, 21 S.W.3d at 335.
          Shortly after the Serna opinion issued, the Texas Supreme Court decided
Fleming Foods of Texas, Inc. v. Rylander, 6 S.W.3d 278 (Tex. 1999). In that suit, the
comptroller maintained that, despite the clear language of section 111.104, the Tax
Code did not permit an indirect taxpayer, or purchaser, like Fleming, who had paid
improperly collected taxes to a seller, to obtain refunds directly from the state unless
the purchaser acquired the seller’s rights to a refund.


 Id. at 279-80. The supreme
court construed the express language of section 111.104 of the Tax Code to permit
purchasers to seek refunds of tax overcharges from the comptroller even though the
tax was collected by a seller rather than paid directly to the state. Id. at 280-81. Like,
the Serna court, the Texas Supreme Court observed, “The Tax Code contemplates that
vendors collect the tax from taxpayers such as Fleming and that the vendors hold those
taxes in trust for the benefit of the State until they are remitted to the State.” Id. at
281. 
          On rehearing, the Serna court held that Fleming Foods did not change the result
reached earlier in Serna. Serna, 21 S.W.3d at 336. The Serna court went on to
explain that Fleming Foods allowed indirect taxpayers either (1) to file a claim with
the comptroller directly or (2) to “seek an assignment of the right to obtain a refund
from the vendor and then file a claim with the Comptroller of Public Accounts.” Id.
(emphasis in original). Either way, the purchaser’s only recourse was against the state,
not by direct action against the seller. Id. 
          With this background, we can turn to the contentions in the present case. 
Burgess contends that Serna’s reading of the “clear language of the Tax Code is
erroneous” in that the Serna court failed to give effect to section 111.104(f) of the Tax
Code, which “clearly contemplate[s] private, direct actions between retailers and
consumers.” Burgess also contends that the Serna court failed to acknowledge or
follow section 3.325 of the Administrative Code.


 Burgess argues that section 3.325
sets out the procedures that must be followed when a purchaser seeks a refund of an
improperly collected sales tax from the comptroller, but not when it seeks a refund
directly from the seller, leaving room for the purchaser to sue the seller for the refund,
contrary to Serna. We address Burgess’s second argument first.
Administrative Rule 3.325
          We acknowledge and agree with Burgess’s point, that the comptroller’s
administrative rules should be given force and effect. “Valid rules and regulations
promulgated by an administrative agency acting within its statutory authority have the
force and effect of legislation.” Lewis v. Jacksonville Bldg. & Loan Ass’n, 540 S.W.2d
307, 310 (Tex. 1976); City of Houston v. Houston Gulf Const. Bldg., 697 S.W.2d 850,
853 (Tex. App.—Houston [1st Dist.] 1985, no writ). In particular, valid rules
promulgated by the comptroller acting within the scope of legislative authority have
the force and effect of legislation. Southwest Airlines Co. v. Bullock, 784 S.W. 2d
563, 568 (Tex. App.—Austin 1990, no writ). Section 111.002 of the Tax Code
authorizes the comptroller to adopt rules for the enforcement of the Code. Tex. Tax
Code Ann. § 111.002 (Vernon 2001). Therefore, we turn to section 3.325 of the
Administrative Code as amended.
          The part of section 3.325 cited by Burgess reads: 
Tax paid to seller. A person who remits tax to a permitted seller may request
from the seller or the comptroller a refund of Texas tax paid in error. The
following procedures must be used.
 
34 Tex. Admin. Code § 3.325(b) (2002) (Tex. Comptroller Pub. Accounts, Tax
Administration) (emphasis added). This part of subsection 3.325(b) acknowledges
that a purchaser may seek a tax refund either from the seller or from the comptroller. 
We observe, however, that subsection (b) explicitly states that the procedures for
obtaining a refund from either the seller or the comptroller set out in that subsection
are mandatory.
          Burgess argues, however, that section 3.325(b) sets out the procedural
requirements only when a seller requests a refund from the comptroller and when a
purchaser requests a refund from the comptroller, but that it is completely silent
regarding the procedure when purchaser requests a refund from a seller. Therefore, she
argues, the administrative rule does not limit how the purchaser may obtain a refund
from the seller. We disagree. 
          Contrary to Burgess’s assertion, section 3.325(b) is not silent as to the
procedure to be followed when a purchaser requests a refund of an erroneously
collected tax from a seller. Section 3.325(b)(1)(A) specifically provides that, before
the seller can request reimbursement of the erroneously collected tax from the
comptroller, it must obtain from the purchaser “a properly completed exemption or
resale certificate” that meets the requirements of the Administrative Code, and it must
retain the certificate to document the basis for the refund. 34 Tex. Admin. Code
3.325(b)(1)(A) (2002). Only after the seller has refunded the erroneously collected tax
and credited the tax to the purchaser’s account may it seek reimbursement from the
state, in accordance with the procedures set out in section 3.325(a), or, alternatively,
take a credit on its next tax return. 34 Tex. Admin. Code § 3.325 (b)(1)(B) (2002). 
If, however, instead of seeking a refund from the seller, the purchaser chooses to
request a refund directly from the comptroller, he must submit a written request to the
comptroller stating the basis for the refund and including information that enables the
comptroller to identify the seller’s sales tax permit number, the purchase, and the
amount of the refund due. 34 Tex. Admin. Code § 3.325 (b)(2)(A) (2002). The
comptroller may require additional information to verify the claim. 34 Tex. Admin.
Code § 3.325 (b)(2)(B) (2002).
          Section 3.325(b)(1) thus makes explicit the procedure that must be followed
when a purchaser requests a tax refund from a seller: the seller may refund the money
(even though it does so from its own funds), in which case it must obtain from the
purchaser a properly completed exemption or resale certificate in order to obtain either
reimbursement for itself from the comptroller or a credit on its next return. 
Alternatively, the purchaser may obtain the refund directly from the comptroller but
he must submit information that permits the comptroller to verify the refund claim. 
34 Tex. Admin. Code § 3.325(b)(2) (2002). In addition, section 3.325(a) provides
“Any person, his attorney, assignee, executor or administrator may request from the
comptroller a refund of any tax remitted to the state but that was not due.” 34 Tex.
Admin. Code § 3.325 (a) (2002). 
          Under the plain wording of section 3.325 of the Administrative Code, there is
simply no room for Burgess’s argument that the comptroller’s rules are silent as to the
procedure to be followed when a purchaser seeks a refund of an improperly collected
tax directly from the seller. What section 3.325 does lack, however, is a procedure for
compelling the seller to refund the collected tax. We, therefore, consider whether
other law grants the purchaser such a right.
Tax Code Section 111.015
          Burgess argues that section 111.015 of the Tax Code indicates that the
provisions and remedies that apply to her case are cumulative of other legal remedies. 
Section 111.015 states, “The rights, powers, remedies, liens, and penalties provided
by this title are cumulative of other rights, powers, remedies, liens, and penalties for
the collection of taxes provided by this title and by other law.” Tex. Tax Code Ann.
§ 111.015 (Vernon 2001). Without citing authority, Burgess interprets this language
to permit her to bring a private cause of action against Gallery. Given this
interpretation, she urges that courts are reluctant to abrogate “common-law rights”
unless the language of the statute is clear and unambiguous, and, since section 111.104
does not clearly and unambiguously state that common law rights are abrogated, the
Legislature cannot have intended that the Tax Code provide an exclusive remedy for
refunding of an improperly collected sales tax. Burgess relies upon Cash America
Int’l, Inc. v. Bennett, 35 S.W.3d 12 (Tex. 2000), as support for her argument.
          Burgess’s reliance on Cash America is misplaced. Cash America was an action
by a pledgor against a pawn shop alleging conversion, negligence, and gross
negligence after the claimant had repaid her loan and been told that the ring she had
pledged had been stolen. Cash America, 35 S.W.3d at 14-15. The Texas Supreme
Court held that the Pawnshop Act did not give the Consumer Credit Commissioner
exclusive jurisdiction over the dispute. Cash America, 35 S.W.3d at 15. Had the Act
conferred exclusive jurisdiction on the Commissioner, the claimant would have had
to exhaust her administrative remedies before bringing suit; but, as it conferred neither
exclusive nor primary jurisdiction on the commissioner,


 the claimant was entitled to
bring her common law claims in state court. Id. The court’s ruling turned on whether,
in enacting the Pawnshop Act, the Legislature intended to abrogate common-law
remedies. The court held that the remedy provided by the Act—requiring
pawnbrokers to replace lost or damaged property with like-kind merchandise—was
probably intended to provide recourse for pawn transactions involving small amounts
of money when a civil suit would not be economically feasible, not to deprive citizens
of common-law rights. Id. at 16. The situation here could not be more different.
          The Tax Code’s procedures for seeking a refund “created a right not existing at
common law and prescribed a remedy to enforce the right; therefore the courts may
act only in the manner provided by the statutes which created the right.” Central
Power & Light Company v. Sharp, 919 S.W.2d 485, 491 (Tex. App.—Austin 1996, 
pet. denied, 960 S.W.2d 617) (citing Robinson v. Bullock, 553 S.W.2d 196, 197 (Tex.
Civ. App.—Austin 1977, writ ref’d n.r.e.)). The Texas Supreme Court has stated,
“[T]he general rule is that where the cause of action and remedy for its enforcement
are derived not from the common law but from the statute, the statutory provisions are
mandatory and exclusive, and must be complied with in all respects or the action is not
maintainable.” Serna, 21 S.W.3d at 335-36 (quoting Mingus v. Wadley, 285 S.W.2d
1084, 1087 (Tex. 1926)). 
          We agree with the Serna court that the Texas Legislature intended for the
remedies and causes of action in the Tax Code to be exclusive. See Serna, 21 S.W.3d
at 335. We, therefore, conclude, as did that court, that “[t]he Texas Tax Code affords
an aggrieved taxpayer the only means for claiming or suing for a refund of
overcharged sales tax,” namely the procedures prescribed by sections 111.104,
111.105, and 112.151, et seq. of the Tax Code and the regulations promulgated
thereunder. See id. When, as here, an agency has exclusive jurisdiction, a party must
exhaust his administrative remedies before seeking judicial review of agency action. 
Subaru, 84 S.W.3d at 221. Prior to exhaustion, the trial court lacks subject-matter
jurisdiction over the dispute and must dismiss those claims within the agency’s
exclusive jurisdiction. Id.
          On the basis of the foregoing analysis, we hold that (1) the comprehensive
scheme set out in sections 111.104, 111.105 and 112.151 et seq. of the Tax Code and
the regulations promulgated thereunder provide the exclusive means of obtaining a
refund of an improperly collected sales tax; (2) exhaustion of administrative remedies
is required as a prerequisite to suit; and (3) the trial court lacked subject-matter
jurisdiction over Burgess’s suit because Burgess failed to exhaust her administrative
remedies. 
          We overrule point of error one. Because we overrule point of error one, we do
not reach Burgess’s other arguments. 
Conclusion
          We affirm the trial court’s judgment.  
 
                                                                        Evelyn V. Keyes
                                                                        Justice
 
Panel consists of Justices Hedges, Keyes, and Evans.