# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00298-CV

**Todd W. Rahmes, Individually and on behalf of all Similarly Situated Consumers, Appellant**

**v.**

**Louis Shanks of Texas, Inc.; Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas; Fred Gilliam, President and CEO of Capital Metropolitan Transit Authority d/b/a Capital Metro; Shirley DeLibero, President of Metropolitan Transit Authority of Harris County; Timothy N. Tuggey, Chairman of the Board of Trustees of San Antonio Metropolitan Transit Authority d/b/a VIA Metropolitan Transit, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN201766, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Todd Rahmes[1] filed suit against appellees Louis Shanks of Texas, Inc., (a furniture retailer with locations in Austin, Houston, and San Antonio) and the Metropolitan Transit Authorities ("MTAs") of Austin, Houston, and San Antonio seeking a refund of overcharged sales tax that the retailer erroneously collected on a furniture purchase delivered outside of the MTA taxing jurisdiction.[2] Rahmes characterized his claim as a "common law action for recovery of [an]

---

[1] Although Rahmes filed his claim individually and on behalf of all similarly situated consumers, the class that Rahmes purports to represent was never certified.

[2] Rahmes originally named the Comptroller, Carol Keeton Strayhorn, as a defendant, but subsequently dismissed her from suit. Nevertheless, Rahmes named Strayhorn as an appellee, and

illegal tax." Appellees moved to dismiss Rahmes's claims for a lack of subject-matter jurisdiction, urging that the tax code provides the exclusive remedy for a tax refund and that Rahmes failed to exhaust his administrative remedies under the code. *See* Tex. Tax Code Ann. §§ 111.104-.107, 112.151 (West 2001).[3] The MTA appellees additionally urged that, as governmental entities, they were protected from suit by sovereign immunity. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637-38 (Tex. 1999). In two issues, Rahmes presents one question on appeal: whether the district court properly granted appellees' pleas to the jurisdiction and dismissed Rahmes's claims. We will affirm.

## DISCUSSION

### *Background*

Metropolitan Transit Authorities are authorized to impose a tax, ranging from 0.25% to 1%, on sales made within their jurisdictional territory. *See* Tex. Transp. Code Ann. §§ 451.401, .404 (West 1999). The Louis Shanks stores in Austin, Houston, and San Antonio are each located within the respective MTA territories for those cities. At the time Rahmes's claim arose, each of those MTAs had adopted a sales tax; the Austin MTA, Capital Metro, imposed a sales tax of one-

---

later filed a motion to dismiss her from the appeal, followed by a motion to withdraw his dismissal as moot based on her previous dismissal from suit in the district court.

[3] Although section 111.104 was amended in 2003, in this opinion we refer to the previous version because the legislature mandated that "[t]he [2003] changes in law made by this Act to chapter 111, Tax Code, apply only to a claim for a refund made on or after [June 20, 2003,] the effective date of this Act," and Rahmes's claim was filed prior to that date on May 29, 2002. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1310, § 122(i), 2003 Tex. Gen. Laws 4748, 4794. However, in discussing the 2003 amendment, we will cite the current version. *See* Tex. Tax Code Ann. § 111.104 (West Supp. 2005).

percent. Retailers such as Louis Shanks collect these MTA sales taxes and hold them in trust for the benefit of the state. *See* Tex. Tax Code Ann. § 111.016(a) (West 2001).

The Comptroller has adopted provisions regarding the administration of these taxes. Pursuant to these rules, if a retailer has locations in multiple MTA territories, then the MTA sales tax is imposed for the territory in which the sale is made, unless the product is delivered to a location outside of that territory. 34 Tex. Admin. Code § 3.424(b)(2)(B) (2003). In that event, no MTA tax is due on the purchase. *Id.*; *see also* Tex. Tax Code Ann. § 322.107 (West Supp. 2005).[4]

In May 2000, Rahmes purchased $10,184.95 worth of furniture from the Louis Shanks store in Austin. Although the furniture was delivered to his home in Dripping Springs, which is outside of Capital Metro's jurisdiction, Rahmes was charged a 1% MTA tax (totaling $101.85) on his purchase. Louis Shanks concedes that the tax was improperly collected but maintains, along with the MTA appellees, that the district court lacked subject-matter jurisdiction over Rahmes's claim because he waived his exclusive remedy for seeking a refund under the tax code by failing to comply with the administrative procedures. *See* Tex. Tax Code Ann. §§ 111.104-.107, 112.151.

***Standard of Review***

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts that affirmatively demonstrate the existence of subject-matter jurisdiction. *Id.* at 446. An opposing party may challenge the court's ability to hear the subject

---

[4] Since 2001, no substantive changes that impact Rahmes's claim have been made to either tax code section 322.107 or administrative code section 3.424.

matter of the case by filing a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a district court has subject-matter jurisdiction presents a question of law that we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

***Exclusive Jurisdiction***

If the legislature has vested an agency with exclusive jurisdiction to decide a particular issue, then the plaintiff must exhaust his administrative remedies as prescribed by the relevant statute and secure all available administrative relief before he may seek judicial review of the agency's determination. *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12 (Tex. 2000). In such a case, if the plaintiff fails to exhaust his administrative remedies, then the court has no subject-matter jurisdiction to review the claim. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

Chapters 111 and 112 of the tax code provide a comprehensive administrative scheme for taxpayers seeking a refund. Generally, a taxpayer may request a refund from the Comptroller within four years of the date that the tax was erroneously collected. Tex. Tax Code Ann. § 111.104. The refund claim must be in writing, state the grounds for which the claim is founded, and be timely filed. *Id*. A hearing may be requested. *Id*. § 111.105 (West 2001).[5] If the taxpayer is dissatisfied with the Comptroller's decision, he may file a motion for rehearing. *Id*. Then—only after a taxpayer has (1) filed a tax refund claim under section 111.104, (2) filed and been denied a motion for

___

[5] As with section 111.104, although section 111.105 was amended in 2003, we only cite to the 2001 version in effect at the time of Rahmes's claim. The current version may be found at Tex. Tax Code Ann. § 111.105 (West Supp. 2005).

4

rehearing under section 111.105, and (3) paid any additional tax found due—the taxpayer may bring suit in the district court to recover the amount of tax erroneously collected. *Id*. § 112.151. The judicial claim must be filed in a Travis County district court within 30 days of the denial of the rehearing, and the Comptroller and Attorney General of Texas must be named as defendants. *Id*.; *see also id.* § 112.001 (West 2001). Section 111.104(d) expressly states that a failure to comply with these administrative procedures constitutes "a waiver of any demand against the state for an alleged overpayment." *Id*. § 111.104(d).

Rahmes acknowledges that the tax code provides an avenue of relief for a tax refund and that he failed to exhaust the administrative remedies under that code. He contends, however, that the tax code does not provide his exclusive remedy. Rather, according to Rahmes, the tax code's administrative remedy for a tax refund is distinguishable from and cumulative of a Texas taxpayer's common law right to recover taxes that were paid involuntarily under fraud, duress, or mistake. Consequently, he urges that the district court had subject-matter jurisdiction over his claim.

The precise issue raised by Rahmes has already been decided by our sister courts in Houston and San Antonio. *See Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330 (Tex. App.—San Antonio 2000, no pet.).

In *Serna*, the plaintiff brought a claim individually and on behalf of a class of similarly situated consumers against H.E.B. alleging that the grocer fraudulently overcharged sales tax on their purchases. 21 S.W.3d at 332. Like Rahmes, Serna attempted to characterize her claim as a common law fraud claim, as distinguished from a statutory refund claim. *Id*. The San Antonio

5

court rejected this argument and held that the tax code provided Serna's exclusive remedy because, in enacting the tax code, "the Legislature intended to create a right and a remedy . . . not recognized at common law," and "where the cause of action and remedy for its enforcement are derived not from the common law but from that statute, the statutory provisions are mandatory and exclusive." *Id.* at 335-36 (quoting *Bullock v. Mel Powers Inv. Builder*, 682 S.W.2d 400, 402 (Tex. App.—Austin 1984, no writ) (first quote), and *Mingus v. Wadley*, 285 S.W. 1084, 1087 (Tex. 1926) (second quote)). On rehearing, the *Serna* court explained that the statute did not abolish all common law fraud claims, but that Serna had merely "filed a claim for a sales tax refund that was cloaked in the form of a common-law fraud cause of action." *Id.* at 336-37. Accordingly, Serna was required to file her claim with the Comptroller and comply with the procedures set forth in chapters 111 and 112 of the tax code. *Id.* at 335. The court concluded that, because Serna failed to exhaust her administrative remedies, the district court properly granted H.E.B.'s plea to the jurisdiction and dismissed Serna's claims for a lack of subject-matter jurisdiction. *Id.* at 336.

Even more akin to Rahmes's claim, the plaintiff in *Burgess* filed suit, individually and on behalf of a class of similarly situated consumers, against Gallery Model Homes (a furniture retailer), seeking to recover monies that the retailer erroneously collected as MTA taxes on sales of furniture delivered outside of the MTA territory. 101 S.W.3d at 552. Burgess, like Rahmes, argued that the tax code did not provide her exclusive remedy but was, instead, cumulative of her common law rights. *Id.* at 553, 557. As does Rahmes, Burgess cited section 111.015 and *Cash America* for support. *Id.* at 557; *see also* Tex. Tax Code Ann. § 111.015 (West 2001) ("remedies . . . provided by this title are cumulative of other . . . remedies . . . for the collection of taxes"); *Cash Am. Int'l*, 35

S.W.3d at 16 (interpreting statute as abrogating common law claims "is disfavored and requires a clear repugnance between common law and statutory causes of action") (citation omitted). The Houston court disagreed with Burgess's interpretation of section 111.015 as permitting a common law remedy because—considering that the statute provides a comprehensive administrative scheme and affords a remedy not provided at common law—the legislature's intent for the tax code to provide the exclusive remedy for a tax refund is clear. 101 S.W.3d at 557-58 (citing *Serna*, 21 S.W.3d at 335-36; *Central Power & Light Co. v. Sharp*, 919 S.W.2d 485, 491 (Tex. App.—Austin 1996, writ denied)). Further, the *Burgess* court distinguished *Cash America* on the basis that, unlike the tax code, the Pawnshop Act at issue in *Cash America* did not create a right not existing at common law nor confer exclusive jurisdiction on the agency to resolve claims. *Id*. The court therefore concluded that "the trial court lacked subject-matter jurisdiction over Burgess's suit because [by failing to file an administrative claim with the Comptroller to obtain a tax refund] Burgess failed to exhaust her administrative remedies." *Id*. at 558.[6]

Rahmes acknowledges *Serna* and *Burgess* but argues that they were incorrectly decided because they ignore the supreme court's prior recognition of a common law claim to recover

---

[6] Rahmes attempts to distinguish *Burgess* on the basis that, rather than pursuing a common law fraud claim as Serna and Rahmes did, Burgess alleged a violation of section 111.104. *See Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550, 553 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). This argument is without merit, however, because like Serna and Rahmes, Burgess failed to file an administrative claim with the Comptroller, as mandated by section 111.104, and instead directly sued the retailer in district court. *See id*. at 551. Thus, all three cases present claimants who did not exhaust their administrative remedies and, therefore, waived their refund claims. *See id*. at 553; *Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330, 336 (Tex. App.—San Antonio 2000, no pet.); *see also* Tex. Tax. Code Ann. § 111.104(d) (West 2001) ("failure to file a timely tax refund claim is a waiver of any demand against the state for alleged overpayment").

involuntarily paid taxes. *See Burgess*, 101 S.W.3d 550; *Serna*, 21 S.W.3d 330. Rahmes primarily relies on *Union Central Life Insurance Company v. Mann* for this contention. *See* 158 S.W.2d 477 (Tex. 1941). *Union Central*, however, does not support Rahmes's position.

First, *Union Central* involved a protest claim, not a refund claim. *Id*. at 478. Under the tax code, protest suits and refund suits are "two distinct types of suits, with different procedural requirements." *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 779 (Tex. App.—Austin 2004, no pet.). Second, *Union Central* did not recognize the common law right sought by Rahmes. Rather, the taxpayer in *Union Central* had paid taxes under protest, and the legislature had granted an appropriation of money as reimbursement, but the Comptroller refused to refund the appropriated money to the taxpayer. 158 S.W.2d at 478. Under these narrow circumstances, the court held that, in addition to the remedy provided by the protest statute, the taxpayer had a "right of reimbursement for taxes wrongfully demanded." *Id*. at 481. Importantly, this recognized only a claim against the Comptroller to enforce a legislative appropriation, which is different than permitting a common law fraud claim to be brought directly against a private retailer who collected taxes on the state's behalf. *See id*. Moreover, in reaching its conclusion, the *Union Central* court affirmed the rule that a statutory remedy is exclusive "where a statute creates a right which did not exist at common law and prescribes a remedy to enforce such right." Accordingly, the court determined that a taxpayer is only "given the right to file the suit provided by the statute" when he has first complied with the administrative procedures and paid the tax under protest. 158 S.W.2d at 480-81.

Rahmes additionally argues that *Serna* and *Burgess* cannot be relied on because they were overruled by the legislature's 2003 amendments to section 111.104 of the tax code. *See* Tex.

8

Tax Code Ann. § 111.104 (West Supp. 2005); *Burgess*, 101 S.W.3d at 558; *Serna*, 21 S.W.3d at 336. This argument is also without merit because the legislature specifically noted that the 2003 amendments only apply to cases filed after June 20, 2003. Rahmes's claim is governed by the 2001 version of the code, as were both *Serna* and *Burgess*. Thus, the holdings and analyses of those cases are fully applicable to Rahmes's case. In any event, the 2003 amendments do not alter the primary holding of *Serna* and *Burgess*—that the tax code provides an exclusive remedy and its administrative procedures must be followed to obtain a refund.[7]

Moreover, despite Rahmes's attempts to characterize this as a common law fraud claim, he is ultimately seeking a refund of overpaid taxes. There are important rationales underlying the requirement that such a claim to be brought pursuant to the tax code against the Comptroller, rather than under the common law against a private retailer. A private retailer such as Louis Shanks collects taxes as an agent of the state. *See* Tex. Tax Code Ann. § 111.016. The retailer is an intermediary who does not have the money nor derive any benefit from it; the tax money belongs to

---

[7] In 2003, the legislature removed a taxpayer's right to directly initiate the administrative proceedings so that, as of June 20, 2003, a taxpayer must first obtain an assignment of rights before filing an administrative refund claim under section 111.104. Tex. Tax Code Ann. § 111.104(b) (West Supp. 2005). Although this amendment overruled *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278 (Tex. 1999), it did not, as Rahmes argues, overrule *Serna* and *Burgess* by implication. *See Burgess*, 101 S.W.3d at 558; *Serna*, 21 S.W.3d at 336.

Rahmes further challenges section 111.104(b)—as amended in 2003—as being an unconstitutional restraint on the open courts provision because it permits a retailer to "completely control" whether a consumer may seek a remedy. *See* Tex. Tax Code Ann. § 111.104(b) (West Supp. 2005). Rahmes is joined in this argument by Rocky and Linda Piazza, and Tara Levy, as *amicus curiae*. We do not reach this issue, however, because the constitutionality of the current version of section 111.104(b) has no impact on Rahmes's claim. For parties whose refund claims arose after the 2003 amendments, such as the *amicus curiae* claimants, the constitutional challenge remains an open question.

9

the state.  *See Serna*, 21 S.W.3d at 333-34.  A retailer, therefore, has no incentive to overcharge a customer for sales taxes and, consequently, "would be improperly harmed by a lawsuit against it to recover sales tax."  *Id*. at 335.  The legislature has purposefully vested the Comptroller with authority over an administrative mechanism in the tax code to handle refund claims.  *See generally* Tex. Tax Code Ann. §§ 111.104-112.151.  In terms of judicial economy, it would be inefficient to allow taxpayers to override this statutory mechanism and seek common law relief for what is actually a tax refund.  *Serna*, 21 S.W.3d at 334; *see also Strayhorn*, 128 S.W.3d at 780 (policy of exclusive statutory remedy ensures appropriate body adjudicates dispute and encourages resolution by parties without resorting to litigation when administrative procedure is provided for that purpose).

We agree with the reasoning and holdings of *Serna* and *Burgess*.  *See Burgess*, 101 S.W.3d at 558; *Serna*, 21 S.W.3d at 336.  The comprehensive remedial scheme set forth in chapters 111 and 112 of the tax code provided Rahmes's exclusive remedy for seeking a refund of the erroneously collected sales tax.  As stated in section 111.104(d), because Rahmes failed to file an administrative refund claim with the Comptroller, he has "waive[d] any demand against the state for an alleged overpayment."  Tex. Tax Code Ann. § 111.104(d); *see also Cornyn v. County of Hill*, 10 S.W.3d 424, 428-29 (Tex. App.—Waco 2000, no pet.) (tax code provides exclusive remedy for seeking tax refund, and claimant must exhaust administrative remedies before pursuing claim in district court).  The district court, therefore, properly granted appellees' pleas to the jurisdiction and dismissed Rahmes's claim for a lack of subject matter-jurisdiction.  Rahmes's first issue is overruled.

Because the district court lacked jurisdiction to hear the subject matter of Rahmes's claim on the basis that he failed to exhaust his administrative remedies, it is unnecessary to reach the

10

second issue of whether the MTA appellees, as governmental entities, were protected by sovereign immunity.

## CONCLUSION

We affirm the district court's grant of appellees' pleas to the jurisdiction and its order of dismissal.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   December 9, 2005

11