Connie BURGESS, Individually and on
Behalf of all Similarly Situated
Consumers, Appellant,

v.

GALLERY MODEL HOMES, INC. d/b/a
Gallery Furniture and all Similarly
Situated Retailers, Appellee.

No. 01–01–01014–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 23, 2003.

Rehearing Overruled March 28, 2003.

Ronald J. Kormanik, Sydow, Kormanik, Carrigan & Eckerson, L.L.P., Micheal D. Sydow, Verner, Liipert, Bernhard, McPherson & Hand, Houston, for appellant.

Craig Smyser, Justin McKenzie Waggoner, Smyser, Kaplan & Veselka, L.L.P., Blaine D. Edwards, Houston, for appellee.

Panel consists of Justices HEDGES, KEYES and EVANS.*

## OPINION

EVELYN V. KEYES, Justice.

This appeal arises from a suit brought by appellant, Connie Burgess, to obtain a refund of overcharged sales tax. On appeal, we must determine whether the trial

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

court properly granted a plea to the jurisdiction in favor of appellee, Gallery Model Homes, Inc. d/b/a Gallery Furniture (Gallery). Burgess presents one issue for our review: whether the trial court has jurisdiction over a suit by a consumer seeking to recover from a retailer payment of a Houston Metropolitan Transit Authority Tax (MTA) erroneously collected by the retailer. We affirm.

## Background

Gallery is engaged in the retail furniture business in Houston, Texas. Like other Houston retailers, Gallery collects state sales taxes and MTA taxes on items it sells. After collecting the taxes, Gallery is obligated to turn the proceeds over to the state.

Burgess purchased furniture from Gallery, which delivered it to Burgess's residence, an area located outside the MTA area. While retailers are required to collect MTA taxes, they are not authorized to collect MTA tax on purchases made inside an MTA area but delivered outside the MTA area. Burgess filed suit individually and on behalf of similarly situated customers,[1] alleging that Gallery improperly and illegally charged and collected an MTA tax.[2]

In response, Gallery filed a plea to the jurisdiction, alleging that jurisdiction over Burgess's claim for a tax refund rests exclusively with the Texas Comptroller of Public Accounts, but, in the event the comptroller denies relief, the courts of Travis county have jurisdiction. The trial

court granted the plea to the jurisdiction. Burgess appeals the trial court's order.

In her sole issue, Burgess argues that the trial court had jurisdiction to determine whether Gallery properly collected the MTA tax on purchases delivered outside the MTA area.[3] Gallery argues, on the other hand, that the Texas Comptroller has exclusive jurisdiction to decide Burgess's tax refund claim.

## Standard of Review

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Id.* at 446. "The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Here, Gallery challenged the trial court's subject-matter jurisdiction through a plea to the jurisdiction.

Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *Mayhew v. Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Similarly, whether an agency has exclusive jurisdiction is a question of law we review de novo. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex.2002). When conducting a de novo review, the appellate court exercises its own judgment and redetermines

1. The trial court refused to certify a class for purposes of a class action.

2. Texas law requires Gallery to collect sales tax for the state on the sale of certain goods; Gallery then holds the funds in trust for the benefit of the state until remitted. *See* Tex. Tax Code Ann. § 111.016(a) (Vernon 2001).

Burgess is attempting to collect the amount of tax overcharged by Gallery.

3. The record appears to support the undisputed fact that Gallery improperly collected the MTA tax.

each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998).

■■■■ In deciding a plea to the jurisdiction, a court may not weigh the claims' merits, but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). The court of appeals must take the allegations in the petition as true and construe them in favor of the pleader. *Texas Ass'n of Business,* 852 S.W.2d at 446; *Texas Dep't of Criminal Justice v. Miller,* 48 S.W.3d 201, 203–04 (Tex.App.-Houston [1st Dist.] 1999), *rev'd on other grounds,* 51 S.W.3d 583, 589 (Tex.2001).

### Discussion

■■■ Burgess brought suit pursuant to section 111.104(f) of the Tax Code. Section 111.104(f) provides that "[n]o taxes, penalties, or interest may be refunded to a person who has collected the taxes from another person unless the person has refunded all the taxes and interest to the person from whom the taxes were collected." TEX. TAX CODE ANN. § 111.104(f) (Vernon 2001).[4]

Section 111.104(f) is a subsection of a scheme for seeking refund of certain taxes, including sales tax, set out in section 111.104 of the Tax Code.[5] Section 111.104(b) provides that "[a] tax refund claim may be filed with the comptroller by the person who paid the tax or by the person's attorney, assignee, or other successor." TEX. TAX CODE ANN. § 111.104(b) (Vernon 2001). Sections (c)-(e) specify the

form of the claim, establish limits on the amount that may be refunded and the time period for requesting a refund, and designate the types of taxes to which the statute applies. TEX. TAX CODE ANN. §§ 111.104(c)-(e) (Vernon 2001).

Burgess contends that, while section 111.104 of the Tax Code provides an administrative remedy for tax overcharges, namely by a person's filing a claim with the comptroller, that remedy is not exclusive; rather, section 111.104(f) "clearly contemplate[s] private, direct actions between retailers and consumers" for the refund of tax overcharges. Gallery argues, in reply, that, because the remedy Burgess seeks is a refund of taxes, the statutory provisions of the Texas Tax Code constitute Burgess's exclusive procedure for obtaining the remedy she seeks.

Under the exclusive-jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute. *Subaru,* 84 S.W.3d at 221 (quoting *Cash America Int'l, Inc. v. Bennett,* 35 S.W.3d 12, 15 (Tex.2000)). An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Subaru,* 84 S.W.3d at 221. Whether an agency has exclusive jurisdiction depends on statutory interpretation. *Id.* Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.*

---

4. The Texas Supreme Court has acknowledged that the term "person" may specify either the purchaser from whom a tax is collected or the seller who collects the tax; *i.e.,* the term "person," for purposes of section 111.104 of the Tax Code includes both direct and indirect taxpayers. *Fleming Foods*

*of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 281 (Tex.1999) (citing to TEX. TAX CODE ANN. § 111.104(f) (Vernon 2001)).

5. Other provisions pertinent to sales tax refunds are set out in sections 111.105 and 112.151 *et seq.* of the Code.

(quoting *Cash America Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex.2000)). Until then, the trial court lacks subject-matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.* We must determine, therefore, whether section 111.104 and the administrative rules promulgated thereunder set out a "pervasive regulatory scheme" for the refund of improperly collected MTA taxes.

### Serna v. H.E. Butt Grocery Co. and Fleming Foods v. Rylander

To support its position that the comptroller has exclusive jurisdiction over suits to refund an improperly collected MTA tax, Gallery relies on the San Antonio Court of Appeals' decision in *Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330 (Tex. App.-San Antonio 1999, no pet.). Burgess recognizes that *Serna* is on point, but she urges that it was incorrectly decided. We therefore turn to an analysis of *Serna.*

In *Serna*, the plaintiff brought an action against H.E. Butt Grocery Co. (H.E.B.), alleging that it fraudulently overcharged state sales tax. *Serna*, 21 S.W.3d at 332. The trial court, in a case of first impression, dismissed the plaintiff's lawsuit for lack of jurisdiction. *Id.* at 336. In reaching its decision, the *Serna* court, relying upon federal case law,[6] held that the Texas Tax Code affords an exclusive remedy for an aggrieved taxpayer to obtain a refund for overcharged sales tax. *Id.* at 335–36. It found that, in collecting sales tax, the remedy afforded by the Texas Tax Code lies only with the ultimate recipient of the tax, not the intermediary; the ultimate recipient is the State of Texas; a seller who collects sales tax merely holds the funds collected in trust for the state until remitted; thus, H.E.B. acted as an agent of the State of Texas government. *Serna*, 21 S.W.3d at 332–33. The *Serna* court concluded that proper administrative remedies for improperly collected taxes lay only with the comptroller; the Texas Legislature did not contemplate direct action against the seller who collected the tax on the state's behalf. *Id* at 333.

The *Serna* court held that the mechanics of obtaining a refund of overcharged sales tax began with a person's pursuing administrative remedies against the ultimate beneficiary of the sales tax, the State of Texas, regardless of whether the person seeking the remedy was the purchaser or the retailer. *Serna*, 21 S.W.3d at 335. The court stated:

> The Texas Tax Code outlines the procedure to file suit (following an unsuccessful administrative claim for refund) for the refund of taxes paid. A person may sue the Comptroller for the amount of tax penalty, or interest if: the person has filed a claim with the Comptroller under section 111.104, the claim has been denied, the person has filed a motion for rehearing under section 111.105, the motion has been denied by the Comptroller, and any additional tax due for the period in which the refund claim is sought has been paid. The suit is to be brought against the Attorney General and the Comptroller in a district court of Travis County, and must be filed before the expiration of 30 days after the motion for rehearing is denied. (citations omitted)

*Serna*, 21 S.W.3d at 335.

Shortly after the *Serna* opinion issued, the Texas Supreme Court decided *Fleming Foods of Texas, Inc. v. Rylander*, 6

---

6. The court, in *Serna*, noted "[w]e realize that these cases from the federal circuit courts of appeals are not binding upon us". *Serna*, 21 S.W.3d at 334. But we draw on the authority of these cases to reach a conclusion that is consistent with the fair and efficient administration of the Texas Sales Tax. *Id.*

S.W.3d 278 (Tex.1999). In that suit, the comptroller maintained that, despite the clear language of section 111.104, the Tax Code did not permit an indirect taxpayer, or purchaser, like Fleming, who had paid improperly collected taxes to a seller, to obtain refunds directly from the state unless the purchaser acquired the seller's rights to a refund.[7] *Id.* at 279–80. The supreme court construed the express language of section 111.104 of the Tax Code to permit purchasers to seek refunds of tax overcharges from the comptroller even though the tax was collected by a seller rather than paid directly to the state. *Id.* at 280–81. Like, the *Serna* court, the Texas Supreme Court observed, "The Tax Code contemplates that vendors collect the tax from taxpayers such as Fleming and that the vendors hold those taxes in trust for the benefit of the State until they are remitted to the State." *Id.* at 281.

On rehearing, the *Serna* court held that *Fleming Foods* did not change the result reached earlier in *Serna. Serna,* 21 S.W.3d at 336. The *Serna* court went on to explain that *Fleming Foods* allowed indirect taxpayers either (1) to file a claim with the comptroller directly or (2) to "seek an *assignment* of the right to obtain a refund from the vendor and *then* file a claim with the Comptroller of Public Accounts." *Id.* (emphasis in original). Either way, the purchaser's only recourse was against the state, not by direct action against the seller. *Id.*

With this background, we can turn to the contentions in the present case. Burgess contends that *Serna's* reading of the "clear language of the Tax Code is erroneous" in that the *Serna* court failed to give effect to section 111.104(f) of the Tax Code, which "clearly contemplate[s] private, direct actions between retailers and consumers." Burgess also contends that the *Serna* court failed to acknowledge or follow section 3.325 of the Administrative Code.[8] Burgess argues that section 3.325 sets out the procedures that must be followed when a purchaser seeks a refund of an improperly collected sales tax from the *comptroller,* but not when it seeks a refund directly from the *seller,* leaving room for the purchaser to sue the seller for the refund, contrary to *Serna.* We address Burgess's second argument first.

### Administrative Rule 3.325

We acknowledge and agree with Burgess's point, that the comptroller's administrative rules should be given force and effect. "Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation." *Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976); *City of Houston v. Houston Gulf Const. Bldg.,* 697 S.W.2d 850, 853 (Tex.App.-Houston [1st Dist.] 1985, no writ). In particular, valid rules promulgated by the comptroller acting within the scope of legislative authority have the force and effect of legislation. *Southwest Airlines Co. v. Bullock,* 784

---

7. At that time, section 3.325(b) of the Texas Administrative Code, promulgated by the comptroller, provided that a person who paid a tax to a seller could not request a refund from the comptroller, but must recover the tax from the seller. *See Fleming Foods,* 6 S.W.3d 278, 281–82 and n. 5. Subsequently, the comptroller amended section 3.325 of the Administrative Code to (1) acknowledge the right of a purchaser to seek a refund of a sales tax either from the seller or from the comp-

troller and (2) to provide a method by which either the seller or the purchaser could obtain reimbursement from the comptroller. 34 TEX. ADMIN. CODE § 3.325(b) (2002).

8. At the time the opinion on rehearing was issued in *Serna,* section 3.325 had been invalidated by *Fleming* and had not yet been amended.

S.W.2d 563, 568 (Tex.App.-Austin 1990, no writ). Section 111.002 of the Tax Code authorizes the comptroller to adopt rules for the enforcement of the Code. TEX. TAX CODE ANN. § 111.002 (Vernon 2001). Therefore, we turn to section 3.325 of the Administrative Code as amended.

The part of section 3.325 cited by Burgess reads:

> Tax paid to seller. A person who remits tax to a permitted seller may request from the seller or the comptroller a refund of Texas tax paid in error. *The following procedures must be used.*

34 TEX. ADMIN. CODE § 3.325(b) (2002) (Tex. Comptroller Pub. Accounts, Tax Administration) (emphasis added). This part of subsection ˙3.325(b) acknowledges that a purchaser may seek a tax refund either from the seller or from the comptroller. We observe, however, that subsection (b) explicitly states that the procedures for obtaining a refund from either the seller or the comptroller set out in that subsection are mandatory.

Burgess argues, however, that section 3.325(b) sets out the procedural requirements only when a seller requests a refund from the comptroller and when a purchaser requests a refund from the comptroller, but that it is completely silent regarding the procedure when purchaser requests a refund from a seller. Therefore, she argues, the administrative rule does not limit how the purchaser may obtain a refund from the seller. We disagree.

Contrary to Burgess's assertion, section 3.325(b) is *not* silent as to the procedure to be followed when a purchaser requests a refund of an erroneously collected tax from a seller. Section 3.325(b)(1)(A) specifically provides that, before the seller can request reimbursement of the erroneously collected tax from the comptroller, it must obtain from the purchaser "a properly completed exemption or resale certificate" that meets the requirements of the Administrative Code, and it must retain the certificate to document the basis for the refund. 34 TEX. ADMIN. CODE 3.325(b)(1)(A) (2002). Only after the seller has refunded the erroneously collected tax and credited the tax to the purchaser's account may it seek reimbursement from the state, in accordance with the procedures set out in section 3.325(a), or, alternatively, take a credit on its next tax return. 34 TEX. ADMIN. CODE § 3.325(b)(1)(B) (2002). If, however, instead of seeking a refund from the seller, the purchaser chooses to request a refund directly from the comptroller, he must submit a written request to the comptroller stating the basis for the refund and including information that enables the comptroller to identify the seller's sales tax permit number, the purchase, and the amount of the refund due. 34 TEX. ADMIN. CODE § 3.325(b)(2)(A) (2002). The comptroller may require additional information to verify the claim. 34 TEX. ADMIN. CODE § 3.325(b)(2)(B) (2002).

Section 3.325(b)(1) thus makes explicit the procedure that must be followed when a purchaser requests a tax refund from a seller: the seller *may* refund the money (even though it does so from its own funds), in which case it must obtain from the purchaser a properly completed exemption or resale certificate in order to obtain either reimbursement for itself from the comptroller or a credit on its next return. Alternatively, the purchaser may obtain the refund directly from the comptroller but he must submit information that permits the comptroller to verify the refund claim. 34 TEX. ADMIN. CODE § 3.325(b)(2) (2002). In addition, section 3.325(a) provides "Any person, his attorney, assignee, executor or administrator may request from the comptroller a refund of any tax remitted to the state but that

was not due." 34 TEX. ADMIN. CODE § 3.325(a) (2002).

Under the plain wording of section 3.325 of the Administrative Code, there is simply no room for Burgess's argument that the comptroller's rules are silent as to the procedure to be followed when a purchaser seeks a refund of an improperly collected tax directly from the seller. What section 3.325 does lack, however, is a procedure for *compelling* the seller to refund the collected tax. We, therefore, consider whether other law grants the purchaser such a right.

### Tax Code Section 111.015

Burgess argues that section 111.015 of the Tax Code indicates that the provisions and remedies that apply to her case are cumulative of other legal remedies. Section 111.015 states, "The rights, powers, remedies, liens, and penalties provided by this title are cumulative of other rights, powers, remedies, liens, and penalties for the collection of taxes provided by this title and by other law." TEX. TAX CODE ANN. § 111.015 (Vernon 2001). Without citing authority, Burgess interprets this language to permit her to bring a private cause of action against Gallery. Given this interpretation, she urges that courts are reluctant to abrogate "common-law rights" unless the language of the statute is clear and unambiguous, and, since section 111.104 does not clearly and unambiguously state that common law rights are abrogated, the Legislature cannot have intended that the Tax Code provide an exclusive remedy for refunding of an improperly collected sales tax. Burgess relies upon *Cash America Int'l, Inc. v. Bennett,* 35 S.W.3d 12 (Tex.2000), as support for her argument.

Burgess's reliance on *Cash America* is misplaced. *Cash America* was an action by a pledgor against a pawn shop alleging conversion, negligence, and gross negligence after the claimant had repaid her loan and been told that the ring she had pledged had been stolen. *Cash America,* 35 S.W.3d at 14–15. The Texas Supreme Court held that the Pawnshop Act did not give the Consumer Credit Commissioner exclusive jurisdiction over the dispute. *Cash America,* 35 S.W.3d at 15. Had the Act conferred exclusive jurisdiction on the Commissioner, the claimant would have had to exhaust her administrative remedies before bringing suit; but, as it conferred neither exclusive nor primary jurisdiction on the commissioner,[9] the claimant was entitled to bring her common law claims in state court. *Id.* The court's ruling turned on whether, in enacting the Pawnshop Act, the Legislature intended to abrogate common-law remedies. The court held that the remedy provided by the Act—requiring pawnbrokers to replace lost or damaged property with like-kind merchandise—was probably intended to provide recourse for pawn transactions involving small amounts of money when a civil suit would not be economically feasible, not to deprive citizens of common-law rights. *Id.* at 16. The situation here could not be more different.

The Tax Code's procedures for seeking a refund "created a right not existing at common law and prescribed a remedy to enforce the right; therefore the courts may act only in the manner provided by the statutes which created the right." *Central Power & Light Company v. Sharp,* 919 S.W.2d 485, 491 (Tex.App.-Austin 1996, pet. denied), 960 S.W.2d 617 (citing *Robinson v. Bullock,* 553 S.W.2d

---

**9.** The doctrine of "primary jurisdiction" requires a claimant to exhaust administrative remedies only if the enforcement of the claim requires the resolution of issues within the special competence of an administrative agency. *Cash America,* 35 S.W.3d at 19.

196, 197 (Tex.Civ.App.-Austin 1977, writ ref'd n.r.e.)). The Texas Supreme Court has stated, "[T]he general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Serna,* 21 S.W.3d at 335–36 (quoting *Mingus v. Wadley,* 285 S.W. 1084, 1087 (Tex. 1926)).

 We agree with the *Serna* court that the Texas Legislature intended for the remedies and causes of action in the Tax Code to be exclusive. *See Serna,* 21 S.W.3d at 335. We, therefore, conclude, as did that court, that "[t]he Texas Tax Code affords an aggrieved taxpayer the only means for claiming or suing for a refund of overcharged sales tax," namely the procedures prescribed by sections 111.104, 111.105, and 112.151, *et seq.* of the Tax Code and the regulations promulgated thereunder. *See id.* When, as here, an agency has exclusive jurisdiction, a party must exhaust his administrative remedies before seeking judicial review of agency action. *Subaru,* 84 S.W.3d at 221. Prior to exhaustion, the trial court lacks subject-matter jurisdiction over the dispute and must dismiss those claims within the agency's exclusive jurisdiction. *Id.*

On the basis of the foregoing analysis, we hold that (1) the comprehensive scheme set out in sections 111.104, 111.105 and 112.151 *et seq.* of the Tax Code and the regulations promulgated thereunder provide the exclusive means of obtaining a refund of an improperly collected sales tax; (2) exhaustion of administrative remedies is required as a prerequisite to suit; and (3) the trial court lacked subject-matter jurisdiction over Burgess's suit because Burgess failed to exhaust her administrative remedies.

We overrule point of error one. Because we overrule point of error one, we do not reach Burgess's other arguments.

### Conclusion

We affirm the trial court's judgment.