**HOTELS.COM, L.P., Appellant,**

v.

**Mary CANALES, Individually and on Behalf of Others Similarly Situated, Appellees.**

No. 04–05–00315–CV.

Court of Appeals of Texas, San Antonio.

Feb. 1, 2006.

Baldemar Garza, Minerva Garza, Law Office of Baldemar Garza, Rio Grande City, James P. Karen, David L. Horan, Tamara Marinkovic, Dallas, for appellant.

Austin Tighe, Vic Feazell, Feazell & Tighe, L.L.P., Austin, Bryan K. Harris, Harris Mejia, L.L.P., Corpus Christi, Thomas E. Bilek, Hoeffner & Bilek, L.L.P., Houston, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

This is an appeal from a trial court's certification of a class action. Appellant Hotels.com brings two major points of error: first, the trial court lacked subject matter jurisdiction because the state comptroller maintains exclusive jurisdiction over the matters raised; and second, the trial court improperly certified the cause of action as a class action under Tex.R. Civ. P. 42(a) and 42(b). We hold that, although the trial court does possess the necessary subject matter jurisdiction to preside over these issues, the trial court did not perform the necessary "rigorous analysis" required under Tex.R. Civ. P. 42(a) and 42(b)(3). Therefore, we reverse the trial court's class certification and remand this matter to the trial court for further action consistent with this opinion.

### FACTUAL BACKGROUND

In March 2003, Mary Canales contacted Hotels.com to make a reservation at a hotel in San Antonio, Texas. Hotels.com contracts with hotels throughout the United States for rooms at a negotiated rate. Hotels.com offers reservation services for these rooms to consumers and businesses through both its internet website and numerous call centers located throughout the United States. Each customer is charged a room rate, entitled "published rate," which is higher than Hotels.com's negotiated rate with the hotel. A surcharge, entitled "taxes/fees" or "tax recovery charge/service fees," is subsequently added to the published rate, but the exact percentages are not delineated for the consumer. Hotels.com maintains this practice prevents its competitors from calculating Hotels.com's negotiated rate for a given room.

By its own admission, Hotels.com neither charges nor collects taxes nor does it remit taxes directly to any taxing authority. Rather, after the customer completes his or her stay, Hotels.com pays the hotel the negotiated rate and keeps the difference between the negotiated rate and the published rate. Hotels.com also pays an additional amount to cover any applicable sales and/or occupancy taxes, based on the negotiated rate, directly to the hotel. The hotel then pays the appropriate taxes to the proper taxing authority. Hotels.com retains the difference between the amount paid by the customer for "taxes/fees" and the amount paid to the hotel for applicable

taxes. Canales paid Hotels.com in advance for the reservation, stayed in the reserved hotel room and subsequently filed suit.

An underlying issue in this case is the effect of Hotels.com's User Agreement containing both an arbitration provision and a Texas choice of law provision. The User Agreement, which has been modified over the years, is accessed through the Hotels.com website. Persons reserving by telephone reservations, like Canales, may not ever view the User Agreement. Those making internet reservations are presented with a link to the User Agreement and language acknowledging that it forms part of their agreement.

After approximately two years of pretrial proceedings, the sole remaining allegation before the trial court for class certification was a breach of contract claim. Canales alleges that Hotels.com entered into a contract to impose a charge reflecting recovery of "taxes/fees" and that this language unambiguously created an agreement to impose a charge related to reimbursement of taxes and fees; but instead, Hotels.com improperly imposed a charge that bore absolutely no relation to these agreed amounts. Canales sought certification for a nationwide class and following a hearing on April 29, 2005, the trial court granted Canales' motion to certify, finding that the class satisfied the requirements of TEX.R. CIV. P. 42(a) and 42(b)(3). The trial court's certification order identified the class as "all persons or entities who reserved and paid for any hotel, motel or resort through Hotels.com."

The trial court issued a lengthy order setting forth its findings and conclusions. The trial court found the following issues of fact and law were common to Canales and to the putative class:

(a) Whether Hotels.com engaged in a practice of charging "taxes" that were not directly related to the taxes paid by Hotels.com;

(b) Whether Hotels.com engaged in a practice of charging a service fee ("fees") but not performing any services in connection with that fee;

(c) Whether Hotels.com's practice of charging "taxes" that were not directly related to the taxes actually paid by Hotels.com constitutes a breach of contract with Plaintiff and the plaintiff class;

(d) Whether Hotels.com's practice of charging a service fee ("fees") and not performing any services in connection with that fee constitutes a breach of contract with Plaintiff and the plaintiff class; and

(e) Whether Plaintiff and the plaintiff class members have sustained damages and, if so, the proper measure of their damages.

The court found that Canales and each class member were charged "taxes/fees" that were uniformly calculated by Hotels.com, and the class claims arose from the same course of conduct and were based on the same legal theories as those of Canales. "Nothing more is required, and therefore, the Court concludes that the typicality requisite has been met." The trial court continued "whether one class member contacted Hotels.com by phone and another did so online, is irrelevant to certification because Hotels.com has admitted that the 'taxes/fees' charge was established by a formula that was identical, regardless of how, when or where the customer rented a room." Moreover, in accordance with the requirements set forth in TEX.R. CIV. P. 42(b)(3), the trial court found "there are no other practical methods of adjudication for these claims."

Hotels.com, appeals the trial court's Class Certification Order on two major points of error. First, Hotels.com argues that the trial court erred in failing to grant its plea to the jurisdiction, because Canales' sole allegation is a claim to recover illegally collected taxes and is therefore within the exclusive jurisdiction of the state comptroller. Second, Hotels.com asserts that the trial court failed to adhere to the requirements of class certification outlined in Tex.R. Civ. P. 42(b)(3) and 42(a) by: (1) not undertaking an appropriate choice-of-law analysis; (2) failing to establish that a class action is a superior method of litigating the dispute; (3) failing to establish that common issues of law or fact predominate; and (4) failing to establish that Canales' claim is typical of the claims of the class and that she can fairly and adequately protect the interests of the class.

## PLEA TO THE JURISDICTION

### Standard of Review

Subject matter jurisdiction is a question of law and thus a district court's ruling on a plea to the jurisdiction is subject to a de novo review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Similarly, whether an agency has exclusive jurisdiction is also a question of law and reviewed de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex.2002). Under a de novo review, the appellate court "exercises its own judgment and redetermines each legal issue," without deference to the trial court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998).

### APPLICATION OF THE TAX CODE

Because Canales alleges "[t]he amount Hotels.com charges consumers for taxes exceeds the amount it actually pays in taxes when it purchases the room from the hotel," Hotels.com asserts Canales seeks to recover a refund of a tax and the matter is therefore within the exclusive jurisdiction of the state comptroller. Section 111.104 of the Texas Tax Code "applies to all taxes and license fees *collected* or *administered* by the comptroller, except the state property tax" and authorizes the comptroller to refund a tax, penalty or interest unlawfully collected. TEX. TAX CODE ANN. § 111.104(a), (e) (Vernon 2002) (emphasis added). Canales, on the other hand, asserts that § 111.104 is inapplicable because the monies over which she is suing are not a tax. Because Canales does not seek to recoup wrongfully paid taxes, but instead monies that were never owed or remitted to any taxing authority, we agree that § 111.104 is inapplicable and the trial court maintains subject matter jurisdiction.

When possible, an appellate court must make every effort to give full effect to legislative intent. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Fitzgerald v. Advanced Spine Fixation,* 996 S.W.2d 864, 865 (Tex.1999); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). The Government Code provides that when ascertaining legislative intent, words and phrases "shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998); *see Republic-Bank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607–8 (Tex.1985).

Section 101.003 of the Tax Code defines a taxpayer as "a person liable for a tax, fee assessment, or other amount imposed by statute or under the authority of a statutory function administered by the comptroller." TEX. TAX CODE ANN. § 101.003(8) (Vernon Supp.2000). A "tax" is defined as "a tax, fee, assessment, charge, or other amount that the comptroller is authorized to administer." TEX. TAX

CODE ANN. § 101.003(13). In order for the fees collected by Hotels.com to constitute a tax, the comptroller must have a statutory duty to collect or administer it. Op. Tex. Att'y Gen. GA–0061 (2003). Administer is defined as: "to manage or conduct; to discharge the duties of an office; to take charge of business; to manage affairs . . ." (citations omitted) BLACK'S LAW DICTIONARY 41 (5th Ed.1979). Simply put, the comptroller does not manage or control the monies about which Canales complains and therefore the fees cannot be considered either a function administered by the comptroller or taxes within the Texas Tax Code.

Hotels.com relies on two primary cases to support its position. *See Serna v. H.E. Butt Grocery Co.,* 21 S.W.3d 330 (Tex. App.-San Antonio 1999, rehearing denied) (plaintiff brought suit to recover overcharged taxes); *Burgess v. Gallery Model Homes, Inc.,* 101 S.W.3d 550 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (plaintiff alleged gallery overcharged taxes and illegally collected a Metropolitan Transit Authority tax). *Serna* and *Burgess* involved taxes collected by the defendants and then remitted to the state comptroller; consequently, Hotels.com's reliance on these cases is misplaced. Both cases involve allegations that the amount of taxes collected was greater than that which was statutorily authorized and therefore a refund of this overcharge from defendants, who paid the taxes directly to a taxing authority, was required. In *Serna,* the plaintiff's claim was a suit for a tax refund and thus the proper remedy was solely within the jurisdiction of the recipient of the taxes, the state comptroller, and not H.E.B., the intermediary. *Serna,* 21 S.W.3d at 333–35. Similarly, in *Burgess,*

the plaintiff sought a refund of a payment of a tax erroneously collected and paid to the comptroller by a retailer. *Burgess,* 101 S.W.3d at 551. The court held an aggrieved taxpayer's only remedy is through the state comptroller. *Id.*

In this case, Hotels.com does not pay any money to a taxing authority. Rather, it is the individual hotel, with which Hotels.com negotiated a room rate, that holds the monies in trust for the state and is liable for the full amount collected. There is no claim that Hotels.com overpaid any taxing authority from which Canales could seek a refund. Canales does not claim Hotels.com collected excessive taxes, only that she was misled with regard to the amount actually collected as taxes and those collected as an additional revenue stream. Importantly, during the discovery process, Hotels.com maintained that they do "not assess, charge or collect taxes." *See Alford Chevrolet–Geo v. Jones,* 91 S.W.3d 396, 404 (Tex.App.-Texarkana 2002, pet. denied).[1] Clearly, if the taxes were owed on a hotel room, the state comptroller would turn to the hotel itself, not Hotels.com for payment. Because the comptroller does not possess any authority to administer the fee, the fee is not a tax. As a result, the trial court properly denied Hotel.com's plea to the jurisdiction.

### CERTIFICATION OF THE CLASS ACTION

#### STANDARD OF REVIEW

█ A trial court's decision to certify a class action under Texas Rule of Civil Procedure 42 is reviewed under an abuse of discretion standard. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 691 (Tex. 2002). Yet, the Texas Supreme Court

---

1. In *Alford,* consumers at a car dealership were assessed a fee that was identified as a tax, although the monies collected were never paid to taxing authority. In doing so, the car dealership combined wrongfully collected taxes with legitimate taxes. No claim was made that collection efforts should be made against the comptroller.

mandates a cautious approach to class certification and has expressly rejected the "certify it now and worry later" approach. *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 435 (Tex.2000). See also *Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 671 (Tex.2004). Certification is only appropriate when the trial court can make an initial determination that the individual issues can be considered in a "manageable, time-efficient, yet fair manner." *Bernal,* 22 S.W.3d at 436.

■■■■ During its review, the trial court "must perform a 'rigorous analysis' before ruling on a class certification to determine whether all prerequisites to certification have been met." *Bernal,* 22 S.W.3d at 435. This analysis requires the trial court to go beyond the pleadings to better understand "the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issue." *Id.* In reviewing the class certification order, we are prohibited from indulging "every presumption in favor of the trial court's ruling." *Schein,* 102 S.W.3d at 690. Instead the certification order must demonstrate *actual* compliance with the certification requirements. *Id.* It is the plaintiff's burden to satisfy all of the requirements as set forth in TEX.R. CIV. P. 42 and there is no right to proceed as a class action. *Bernal,* 22 S.W.3d at 439.

### TEXAS RULE OF CIVIL PROCEDURE 42

For a class to be certified in accordance with Rule 42, the plaintiff must satisfy four threshold elements:

(1) numerosity—the number of plaintiffs must be "so numerous that joinder of all members is impracticable";

(2) commonality—"there are questions of law or fact common to the class";

(3) typicality—"the claims or defenses of the representative parties are typical of the claims of defenses of the class"; and

(4) adequacy of representation—the proposed representatives "will fairly and adequately protect the interests of the class."

TEX.R. CIV. P. 42(a); *Union Pac. Res. Group, Inc. v. Hankins,* 111 S.W.3d 69, 73 (Tex.2003). Additionally, class actions must satisfy at least one of the four subdivisions of Rule 42(b). TEX.R. CIV. P. 42(b). Here, the trial court certified the class action under Rule 42(b)(3), which states:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See* TEX.R. CIV. P. 42(b)(3). Not only must the trial court perform a rigorous analysis of the prerequisites necessary for class certification, but its analysis must be reflected in its order. *See* TEX.R. CIV. P. 42(c)(D) [2]. Importantly for this case, Rule 42(c)(D) requires that a trial court's order granting certification under Rule 42(b)(3) must state: "(v) other available methods of adjudication that exist for the controversy" and "(vii) why a class action is or is not superior to other available methods for the fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(c)(D).

### Typicality

■■■■ Hotels.com argues in its fifth point of error that Canales fails to meet the prerequisite of typicality because her

---

**2.** Rule 42(c)(D) requires the court specifically set forth findings relating to nine key factors in class certifications.

claims are not subject to the same defenses as those of the unnamed plaintiffs. To satisfy the typicality requirement of Rule 42(a), a plaintiff must prove that she possesses the same interest and suffered the same injury as the other members of the class, that her claims are based on the same legal theory as the other class members' claims and that she does not have certain potential defenses peculiar to her. Tex.R. Civ. P. 42(a); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

■■■ To be typical, class representatives need not be identical, but their claims must arise from the same event or course of conduct and must be based on the same legal theories. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.). Here, the trial court concluded that typicality had been satisfied with regard to "the uniformity of the written contract and the claims made by the Plaintiff for breach, if Hotels.com breached its contract with Plaintiff, it breached it with all Class members." The court continued that there "are no defenses asserted by Hotels.com which make Canales atypical of the class."

Hotels.com asserts that Canales' claim is atypical of the class members because she made her reservation via telephone while the majority of the putative class made their reservations over the internet. Canales acknowledges, and the trial court has already determined, that the User Agreement containing the arbitration clause was not a term of the contract between Canales and Hotels.com. Hotels.com asserts that the terms and conditions of the reservations made by the internet class members subject these class members to arbitration. Thus, if the User Agreement is binding on the internet class members, Hotels.com, or the individuals can compel these claims to arbitration.

Because the class is defined as a breach of contract for "all persons making a reservation through Hotels.com," Hotels.com contends Canales must prove the same legal theories apply to the formation, existence, content, validity, and enforceability of each individual telephonic or internet based contract between Hotels.com and each of the putative class members. Hotels.com alleges that in requiring website customers, unlike telephone customers, to click "I Agree" to the terms and conditions, including the User Agreement, within the contract, different contract clauses apply among the class member and therefore Canales failed to prove that her claims are typical of each and every class member. Additionally, Hotels.com claims that because the language within the User Agreement has changed over time, different class members may have varying questions of law and fact regarding which terms and conditions are binding.

■■■ In order to determine whether Canales is typical of her class, we must examine the internet class members and their agreement with Hotels.com. Although the trial court determined the User Agreement did not apply to Canales, the Class Certification Order does not contain an analysis or even a reference to the application of the User Agreement to internet consumers who make up the majority of the Hotels.com customers. We, therefore, review the applicable law relating to on-line contracts.

### On–Line Contracting

There are, at least, two types of electronic form agreements. "Click-wrap" agreements require the user to review or scroll through terms and assent to the contractual terms by clicking a button that reads "I Agree" or manifesting some oth-

er means of express assent and "browse-wrap" agreements include terms and conditions that are either posted on the Web site, a hyperlink or are accessible on the screen, but do not require the user to expressly manifest assent. *See Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974 (E.D.Cal.2000). The reservation page on the Hotels.com website, included as part of the record, required consumers to click on a button that said "I Agree to the Terms and Conditions Book Reservation" to reserve their room. Right above the button, the terms and conditions specifically provided, "By proceeding with this reservation you agree to all Terms and Conditions, [including] and all terms and conditions contained in the *User Agreement*." The User Agreement phrase was hyperlinked to the User Agreement pages. Additionally, the reservation page referenced the User Agreement three different times.

The Hotels.com User Agreement cannot be neatly characterized as either a "click-wrap" or "browse-wrap" agreement. Yet, it appears likely that the User Agreement may provide the option of binding arbitration for a portion, if not all, of the internet consumers. Clearly, rigorous analysis of typicality and even commonality requires a review of the potential enforceability of the arbitration provision contained in the User Agreement.

In the landmark case of *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17 (2nd Cir.2002), the court looked at what has been defined as a "browse-wrap" agreement, that being an agreement whereby the user can download the software prior to manifesting assent to any licensing terms, and before being given an opportunity to view any terms or actually receiving notice of the terms. *Id.* at 21. In *Specht,* the plaintiffs sought to download free software. No references to license terms was made on screen before they clicked on the download button. Instead, the sole reference to license terms was located in text visible only if they scrolled down to the screen below the download button's location. The court determined that there could be no mutual assent when a notice of the existence of license terms governing use of software was visible to internet users only if they scrolled down the screen after being able to download the software. *Id.* at 32.

The Second Circuit's recent decision in *Register Com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2004), distinguishes *Specht* and attempts to further evaluate the necessary standards enforceable online contracts must meet. In *Register,* the defendant, on a daily basis, utilized information off Register's website in violation of its terms of use. The defendant claimed it was not bound by Register's restrictions due to lack of legally enforceable notice because the information did not appear until after submission of the query and receipt of the information. Although the court held the agreement was by its very nature a "browse-wrap" agreement, the agreement was upheld because the defendant saw the terms every single time it requested information and therefore could not simply disregard those terms and exploit the information received. *Id.* at 403.

Finally, in *Barnett v. Network Solutions,* 38 S.W.3d 200, 204 (Tex.App.-Eastland 2001, pet. denied), the court upheld a forum selection clause in an online contract for registering Internet domain names that required users to scroll through terms before accepting or rejecting them. The plaintiff challenged the validity of the forum selection clause. *Id.* at 202. Unlike *Specht,* the Network Solutions website required a customer to scroll through the portion of the contract provision in question *prior* to purchasing the product. *Id.*

at 204. Thus, the court reasoned, the plaintiff had sufficient opportunity to read and understand the contractual provision. *Id.*

In the present case, although the website does not require the consumer to actually open and view the User Agreement, the consumer must click "I Agree to the Terms and Conditions" which specifically state "by proceeding with this reservation, you agree to all Terms and Conditions, which include ... all terms contained in the *User Agreement.*" A consumer continuing the transaction had a choice to continue with or without reviewing the additional terms and conditions. By clicking "I Agree to the Terms and Conditions," the consumer presumably selected to follow through with the contract, consciously aware of the additional terms and conditions and their availability. If the link is sufficient notice of the arbitration provision for even part of the internet consumers, then Canales is arguably not a typical plaintiff of the entire class. If however, Hotels.com's User Agreement is found to be insufficient notice to the consumer, the User Agreement would be inapplicable and Canales would likely satisfy the typicality requirement. The trial court was required to analyze whether the arbitration clause applied to the internet consumers as a necessary prerequisite to a determination of typicality, commonality and superiority.

The arbitration provision in the present case is broad, encompassing "any dispute arising from or relating to the use of [Hotels.com's] website or hotel reservations made through" Hotels.com. *See AutoNation USA Corp., v. Leroy,* 105 S.W.3d 190, 197–98 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding), As such, it is likely that arbitration will apply to at least a portion of the class that made their reservations over the internet or via Hotels.com's website.

In contrast, Hotels.com's customers that made reservations over the telephone are only required to provide an email address, a fax number or a mailing address so that a written confirmation of the reservation can be sent. This confirmation refers to a link to the Hotels.com website whereby the customer can view the User Agreement. Hotels.com moved to arbitrate Canales' claims early in the case. On September 18, 2003, after a hearing and full briefing, the trial court made a judicial determination that Canales was not subject to the arbitration clause. Neither party appealed this ruling and we do not disagree with the court's determination. However, the record is void of any analysis by the trial court of whether the User Agreement applies to the prospective class members consisting of internet consumers. As such, the trial court failed to perform the necessary "rigorous analysis," prescribed by *Bernal,* on the issue of typicality. The trial court's one line finding that "there are no other practical methods of adjudication for these claims" does not appear to meet the Supreme Court's requirement of a "rigorous analysis." The trial court was required to perform a thorough analysis of the contract and the incorporation of the User Agreement, if any, to determine whether arbitration is available to a significant portion of the putative class. Because there is no evidence in the record of any such analysis, we hold the trial court abused its discretion.

## CONCLUSION

The trial court previously determined that the arbitration clause in the User Agreement was inapplicable to Ms. Canales. According to the Class Certification Order, the trial court states that the User Agreement was inapplicable because Canales made her reservations over the phone. This ruling was never challenged.

Yet, the majority of the putative class made their reservations through Hotels.com's website and the User Agreement potentially could be a part of their contract. Thus, the possibility of antagonism within the class exists. More importantly, however, the trial court never performed the required "rigorous analysis" to determine whether it would affect the class certification.

The burden of proof regarding certification is on the plaintiff. *Schein*, 102 S.W.3d at 691–92. As such, we conclude the trial court abused its discretion by failing to include the requirements set forth in Rule 42(c)(D) in its certification order and in finding the named representative established the typicality requirement under Rule 42(a)(3) without assessing the contractual implication of Hotels.com's User Agreement. Because the plaintiff must establish each and every element under Rule 42(a), we need not proceed further in our evaluation. We therefore reverse and remand to the trial court for further proceedings consistent with this opinion.