Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-09-00562-CV

Maggie **HADDAD**,
Appellant

v.

**ISI AUTOMATION INTL., INC.**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-02344
Honorable Antonia Arteaga, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed: April 28, 2010

AFFIRMED

This is an interlocutory appeal from the trial court's order denying Maggie Haddad's special

appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2009). Haddad

contends the trial court erred in denying her special appearance because (1) the evidence is legally

and factually insufficient to establish specific jurisdiction, (2) the evidence is legally and factually

insufficient to establish general jurisdiction, and (3) exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. We disagree, and therefore affirm.

## BACKGROUND

ISI Automation Intl., Inc. ("ISI") sells and installs media and electronic equipment for residential and commercial customers. According to ISI, it contracted with Haddad for the purchase and installation of media and electronic equipment to be used in Haddad's Mexico condominium. ISI filed suit against Haddad for breach of contract and quantum meruit/unjust enrichment, claiming Haddad owed $52,798.00 for work done in accordance with two change orders. With regard to jurisdiction, ISI asserted Haddad resides in San Antonio, Texas, contracted with ISI, and had substantial contacts with the State.

In response, Haddad filed a special appearance in which she categorically denied the existence of either specific or general jurisdiction, and supported the denial with her affidavit. ISI filed a response to Haddad's special appearance, supported by the affidavit of Eduardo Orozco, the President and sole shareholder of ISI. In his affidavit, Orozco asserted numerous contacts in an effort to establish the existence of either specific or general jurisdiction.

The trial court held a hearing on Haddad's special appearance. At the hearing, in addition to the evidence presented by the affidavits of Haddad and Orozco, the trial court swore in Orozco, who testified, under questioning by the court, to Haddad's other alleged forum contacts. At the conclusion of the hearing, the trial court denied Haddad's special appearance. The court's ruling was later reduced to writing in an order dated August 17, 2009. Haddad then perfected this appeal.

**ANALYSIS**

***ISI's Contention Regarding Verification of Special Appearance***

Before we address the merits of Haddad's challenge to the trial court's denial of her special appearance, we consider ISI's assertion that Haddad's special appearance was not properly verified, and therefore the trial court properly denied it. Rule 120a of the Texas Rules of Civil Procedure, which governs special appearances, states that a "special appearance shall be made by sworn motion." TEX. R. CIV. P. 120a. ISI argues the affidavit attached to Haddad's special appearance is defective because it merely verifies the facts in the affidavit, and fails to verify the facts set forth in the special appearance. *See Casino Magic Corp. v. King*, 43 S.W.3d 14, 18 (Tex. App.—Dallas 2001, pet. denied) (holding that affidavit was insufficient to constitute verification of special appearance because it attested only to facts in affidavit, not those in special appearance, and special appearance contained a number of jurisdictional facts that the affidavit did not).

The Texas Supreme Court has held that an unverified special appearance does not constitute a general appearance and may be amended any time before the defendant makes a general appearance. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998); *see Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (validating filing of amended verification after notice of appeal and appellate briefs filed). It is therefore axiomatic that any complaint that a special appearance is not verified must be brought to the trial court's attention to give the moving party an opportunity to cure the defect. *See PCC Sterom, S.A. v. Yuma Exploration & Prod. Co.*, No. 01-06-00414-CV, 2006 WL 2864478, at *2 (Tex. App.—Houston [1st Dist.] Oct. 5, 2006, no pet.) (mem. op.) (holding plaintiff's failure to object to unverified amendments to special appearance waived complaint) (citing *Fountain v. Burklund*, No.

03-01-00380-CV, 2001 WL 1584011, at *3 (Tex. App.—Austin Dec. 13, 2001, pet. denied) (not designated for publication) (holding that lack of objection regarding unverified special appearance waived complaint on appeal)). Failure to object, i.e., bring the error to the trial court's attention, waives the complaint on appeal. *See id.*; *see also* TEX. R. APP. P. 33.1. ISI failed to raise the absence of verification in the trial court, raising it for the first time on appeal. Accordingly, we hold ISI has failed to preserve this complaint.

Moreover, even if we were to address the merits of ISI's complaint, we would find it to be without merit. Although Haddad's affidavit does not specifically verify the facts stated in the special appearance, she properly verifies all the facts within her affidavit, which are the same as those contained in the special appearance. When the court in *Magic Corp.* held that the movant's affidavit was insufficient to constitute verification of the special appearance under rule 120a, it did so in part because the special appearance "included a number of jurisdictional 'facts' which the witness failed to attest to in the affidavit." 43 S.W.3d at 18. Here, the facts within the special appearance are repeated in the properly sworn affidavit. Accordingly, we hold the affidavit was sufficient to verify the special appearance.

### *Standard of Review*

Whether a court has jurisdiction over a nonresident defendant is a question of law subject to de novo review. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In a de novo review, the appellate court "'exercises its own judgment and redetermines each legal issue,'" without any deference to the trial court. *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 151 (Tex. App.—San Antonio 2006, no pet.) (quoting

*Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). When the trial court does not issue findings of fact and conclusions of law in support of its ruling, the appellate court must infer "'all facts necessary to support the judgment and supported by the evidence. . . .'" *Moki Mac*, 221 S.W.3d at 574 (quoting *BMC Software*, 83 S.W.3d at 795). However, when, as here, "the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency." *BMC Software*, 83 S.W.3d at 795.

### *Personal Jurisdiction*

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes it, and (2) the exercise of jurisdiction does not violate federal and state constitutional due-process guarantees. *Kelly*, 2010 WL 143985, at *3; *Moki Mac*, 221 S.W.3d at 574. The long-arm statute provides a list of acts that may constitute doing business in Texas, including, as applies here, contracting with a Texas resident where the contract is to be performed in whole or in part in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (Vernon 2008). The broad "doing business" language of the long-arm statute permits a trial court's jurisdiction to "'reach as far as the federal constitutional requirements of due process will allow.'" *Kelly*, 2009 WL 143985, at *3 (quoting *Moki Mac*, 221 S.W.3d at 575). The exercise of personal jurisdiction will not violate due process "'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.'" *Id.* A nonresident defendant establishes minimum contacts when she purposefully avails herself of the privilege of conducting activities within the state, invoking its benefits and legal protection. *Kelly*, 2009 WL 143985, at *3 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). In other words, the defendant's activities

must support the conclusion that she could reasonably anticipate being subject to the jurisdiction of the Texas court system. *Walz v. Martinez*, No. 04-08-00869-CV, 2009 WL 4153436, at *3 (Tex. App.—San Antonio Nov. 25, 2009, no pet.) (mem. op.). In making the purposeful availment determination, courts look to (1) the defendant's contacts with the forum as opposed to those of the plaintiff or some third party, (2) whether the contacts are purposeful as opposed to random, fortuitous, or attenuated, and (3) whether the defendant sought a benefit, advantage, or profit by availing herself of the jurisdiction. *Id*. (citing *Retamco Operating*, 278 S.W.3d at 338-39). "Because of the unique and onerous burden placed upon a party called upon to defend a suit in a foreign legal system, the minimum contacts analysis is particularly important when the defendant is from a different country." *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction exists if a nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *BMC Software*, 83 S.W.3d at 795-96. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity performed in the forum. *Id*. at 796; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1). General jurisdiction arises when a defendant's contacts with the forum are continuous and systematic so that the exercise of jurisdiction is proper even if the cause of action did not arise from or relate to the defendant's forum contacts. *BMC Software*, 83 S.W.3d at 797.

"[S]pecial-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 2009 WL 143986, at *3. The plaintiff bears the initial burden to plead allegations that would bring the nonresident defendant within the reach of the long-arm statute. *Id.* If the plaintiff pleads sufficient jurisdictional allegations, the defendant must then negate all bases of personal jurisdiction alleged by the plaintiff.

*Id.* The defendant can negate jurisdiction factually or legally. *Id.* "Factually, the defendant can present evidence that [she] has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* at *4. However, the plaintiff may then submit its own evidence, affirming its allegations; it risks dismissal if it cannot present evidence establishing personal jurisdiction. *Id.* A defendant may also defeat personal jurisdiction by showing that even if the plaintiff's alleged facts are true, the evidence is legally insufficient, i.e., the defendant's contacts fall short of purposeful availment, or the plaintiff's claims do not arise from the alleged contacts, or traditional notions of fair play and substantial justice would be offended if jurisdiction over the defendant were exercised by the trial court. *Id.*

With regard to jurisdiction, ISI pled Haddad resides in San Antonio, Texas, contracted with ISI, and had substantial contacts with the state. In support of her special appearance, Haddad presented her affidavit by which she attempted to negate ISI's allegations, and establish an absence of contacts with Texas. In her affidavit, she averred:

•She was born in Mexico, resides in Mexico, and is a citizen of the Republic of Mexico.

•She has never resided nor lived in Texas.

•She does not have a designated agent for service in Texas.

•She is not engaged in any business in Texas, does not maintain a place of business in Texas, and does not have any employees, servants, or agents in Texas.

•She does not receive income from Texas.

•She has not filed any lawsuits in Texas.

•Her only contact with Texas is a vacation home in San Antonio, which she visits "several times a year on a temporary basis."

ISI responded by presenting evidence, through the affidavit of ISI's president, Orozco, in an attempt to affirm its jurisdictional allegations and avoid dismissal. *See id.* ISI's evidence established:

•ISI and Haddad negotiated the contract in Texas.

•Haddad signed the contract in Texas.

•Haddad deposited payments into ISI's San Antonio, Texas bank account.

•The system purchased by Haddad was designed in its entirety by ISI in San Antonio, Texas.

•All equipment purchased by Haddad was ordered from ISI's San Antonio, Texas office.

•The equipment was delivered to and programmed, assembled, and tested in San Antonio, Texas.

•ISI obtained work visas for the three Mexican citizens it hired to install and program Haddad's system so they could travel to Texas for training.

•Orozco oversaw the work done in Mexico over the Internet, established a special phone line in San Antonio, Texas to simplify oversight and contact, and made six personal visits to Mexico.

•Orozco met with Haddad's alleged agent, an interior designer, in Texas to review progress on the project.[1]

•Orozco twice met with Haddad in San Antonio, Texas to discuss the status and progress of the project.

•ISI previously entered into a contract with Haddad for services to be performed on Haddad's San Antonio, Texas vacation home.

---

[1] We note that in her brief Haddad denied she was represented by any agent, specifically the interior designer referred to by Orozco in his affidavit and in testimony at the special appearance hearing. However, Haddad did not present any evidence to the trial court with regard to this issue, and there is nothing to support her contention in the record.

At the special appearance hearing, Orozco testified he met with Haddad in San Antonio three or four times, but clarified that two of those meetings concerned work on her San Antonio vacation home, not work on the Mexico condominium that forms the basis of ISI's pending suit. Orozco also stated Haddad has a son and daughter-in-law in San Antonio, but could not say whether there were any grandchildren in San Antonio.

*Specific Jurisdiction*

Haddad first contends the evidence is legally and factually insufficient to establish specific jurisdiction, and therefore, the trial court erred in denying her special appearance. Haddad argues that even if ISI's allegations regarding her contacts with Texas are true, the contacts fall short of purposeful availment, do not arise from the alleged contacts, and traditional notions of fair play and substantial justice would be offended if the trial court exercised jurisdiction over Haddad. *See id.*

With regard to specific jurisdiction, we have already noted it is not enough that Haddad may have purposefully availed herself of the benefits and protection of the forum; rather, ISI's causes of action must arise from or be related to Haddad's contacts or activities. *See id.*, at *3 (citing *Retamco Operating*, 278 S.W.3d at 338). The focus is on Haddad's actions and choices to enter the forum and conduct business. *See Kelly*, 2009 WL 143985, at *5. Only her contacts with the forum are relevant; ISI's activities or those of a third person are irrelevant. *See Moki Mac*, 221 S.W.3d at 575. Moreover, "there must be a substantial connection between [Haddad's forum] contacts and the operative facts of the litigation." *Id.* at 585. In making these determinations, we look only to Haddad's contacts with Texas; ISI's contacts or the contacts of third persons are irrelevant. *See id.* at 575.

ISI contends the contacts established by its evidence are sufficient minimum contacts to establish the existence of specific jurisdiction, and given these contacts traditional notions of fair play and substantial justice are not offended. We agree.

We recognize that several contacts alleged by ISI cannot be considered in determining whether Haddad purposefully availed herself of the privilege of conducting activities in Texas because they are *ISI's* contacts with Texas, not Haddad's. *See id.*; *see also, e.g., Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (focusing jurisdictional inquiry on defendant's presence in, or contact with, forum). These include: (1) the design of the system, (2) the purchase of equipment, (3) the delivery, programming, and assembly of the equipment, (4) procurement of work visas for Mexican citizens for purposes of training them in Texas, (5) oversight of the work via the Internet, (6) installation of a special phone line, and (7) numerous visits to Mexico by Orozco. These were actions taken by ISI and establish ISI's relationship to the forum, but are wholly unrelated to any contact by Haddad, and therefore, cannot be considered. *See id.* Additionally, there are other contacts we cannot consider because there is no "substantial connection" between the contacts and ISI's claims. *See Moki Mac*, 221 S.W.3d at 585. These "contacts" include the fact that Haddad has family in Texas, owns a vacation home in Texas, and Haddad and ISI twice met regarding a previous contract between the parties related to services for Haddad's vacation home.

When these alleged contacts are disregarded, we are left with the following: the contract was negotiated and signed in Texas, Haddad deposited payments into ISI's Texas bank account, Haddad twice met with Orozco in Texas regarding the work on her condominium, and Orozco twice met with Haddad's alleged agent in Texas concerning the project. The question is whether these contacts,

when considered together, are sufficient to establish purposeful availment, supporting the conclusion that Haddad should have anticipated being haled into a Texas court.

We agree with Haddad that the mere negotiation of, and entry into, a contract with a Texas resident is by itself insufficient to establish minimum contacts for the purpose of bringing a nonresident into a Texas court. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597-98 (Tex. 2007) (holding contracting with and accepting account-initiation fee from Texas resident for services performed in California are insufficient to satisfy minimum contacts test; contract alone does not constitute sufficient contact for due process purposes); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 730 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that merely contracting with Texas resident does not satisfy minimum contacts requirement). We also agree Haddad's deposit of payments into ISI's Texas bank account, if considered in isolation, is insufficient to establish purposeful availment. *See Blair Commc'n, Inc.*, 80 S.W.3d at 730 (holding that jurisdiction is not justified by fact that contract is payable in Texas). However, when these contacts are coupled with Haddad's remaining contacts–two visits by Haddad and two visits by an alleged agent to discuss the project and its progression–we hold there are sufficient contacts to show Haddad purposefully availed herself of the privilege of conducting activities in Texas, seeking a benefit from her contract with ISI, a Texas corporation. *See Walz*, 2009 WL 4153436, at *3 (citing *Retamco Operating*, 278 S.W.3d at 338-39). Given that Haddad negotiated and contracted in Texas with a Texas corporation, performed part of the contract in the forum by depositing funds into ISI's bank account, met and conferred with Orozco at least twice in the forum, and sent an agent to discuss the project with Orozco on two occasions, she must have reasonably anticipated being subject to the jurisdiction of the Texas court system. *See Walz*, 2009 WL 4153436, at *3. Although the contacts

are not extensive, they are far more than merely random or fortuitous so as to deprive Texas of jurisdiction over Haddad. To draw Haddad into a Texas court on the basis of these contacts, would not offend traditional notions of fair play and substantial justice. *See Kelly*, 2009 WL 143985, at *3 (citing *Moki Mac*, 221 S.W.3d at 575). Accordingly, we overrule Haddad's first and third issues, and hold the trial court did not err in concluding it had specific jurisdiction over Haddad.

*General Jurisdiction*

Haddad also contends the evidence is legally and factually insufficient to support a finding of general jurisdiction. She therefore asserts the trial court erred in denying her special appearance. Because we have determined that the specific jurisdiction exists based on the long-arm statute and Haddad's minimum contacts with the forum, we need not determine whether general jurisdiction exists. We therefore need not consider Haddad's second issue.

## CONCLUSION

We hold Haddad failed to negate specific jurisdiction. The contacts alleged and proved by ISI met the minimum contact requirements for specific jurisdiction. Haling Haddad into a Texas court based on the contacts in this case would not offend due process and its notions of fair play and substantial justice. Accordingly, we affirm the trial court's order denying Haddad's special appearance.

Marialyn Barnard, Justice